**MOON LAKE WATER USERS ASSOCIATION, a corporation, Plaintiff and Appellant,**

**v.**

**Lester HANSON and Vera H. Gagon, as Trustees in Trust for the Use and Benefit of the children and heirs, devisees and legatees of Paul S. Hanson, Deceased, et al., Defendants and Respondents.**

No. 13785.

Supreme Court of Utah.

May 9, 1975.

---

11. 97 Ariz. 36, 396 P.2d 699, 612 (1964).

E. J. Skeen, Skeen & Skeen, Joseph Novak, Salt Lake City, for plaintiff-appellant.

Clair M. Aldrich, Aldrich & Nelson, Provo, George E. Stewart, Roosevelt, for defendants-respondents.

MAUGHAN, Justice:

In January of 1963, plaintiff filed an action against Lester Hanson and Vera H. Gagon, as trustees, and against Gordon Hanson and his wife, hereafter Hanson, for the purpose of condemning land for a reservoir site. The action was brought pursuant to the provisions of 73–1–6, U.C.A.1953, as amended, which provides that any person may acquire, by eminent domain, a right of way for ditches, reser-

voirs, etc. 73–1–5 says that the use of water for beneficial purposes, as provided in the title on water and irrigation is a public use. These actions were consolidated for trial pursuant to 78–34–6(5). References herein to statutes in Title 78 are to the provisions as they stood at the time of trial —some of them have since been amended.

Pursuant to the provisions of 78–34–6 plaintiff's complaint made a statement of the right of plaintiff to condemn, in the following words: "That plaintiff has a right to condemn the land required for such project under Section 73–1–6, Utah Code Annotated 1953." Plaintiff recovered judgment against all defendants, as prayed. The court then made separate findings, conclusions and judgment for the trustees and Hanson. With reference to the trustees the court's findings were, in part: "That plaintiff has a right to condemn the land required for such project under Section 73–1–6, Utah Code Annotated 1953." On this finding the judgment was based. This judgment was filed September 6, 1963. A copy of these findings, conclusions and judgment were duly served on counsel for the trustees. Thereafter, pursuant to the terms of 78–34–15 a final judgment of condemnation was filed October 3, 1963. In paragraph 1 of the final judgment it is said, "That the lands hereinafter described are taken and condemned for the uses and purposes described and set forth in the complaint. . . . " In paragraph 3 of this same judgment it is stated that, "the property hereinafter described and the title thereto shall vest in the plaintiff in fee simple." A copy of this final judgment was never served on counsel for the trustees, neither pursuant to 77(d), U.R.C.P., nor personally, by counsel for plaintiff.

On the 23d day of October, 1972, plaintiff commenced the instant action against the trustees seeking to quiet title to the oil and mineral rights under the land it had condemned nine years earlier. It was thereafter discovered by counsel for the trustees that the final judgment of October

3, 1963, differed from the findings and judgment of September 6, 1963, in that the final judgment stated the taking was in fee simple, whereas the earlier findings and judgment referred only to 73–1–6, which provides for the taking of a right of way only. The ambiguity created by paragraphs 1 and 3 of the final judgment was also discovered.

It was at this time that the trustees amended their answer and counterclaim seeking to quiet title to the oil and mineral rights, not only in the lands taken from the trustees, but also in those taken from Hanson.

At the conclusion of the cause the trial judge, confronted with these obvious ambiguities in the judgments, construed the final judgment to conform to the pleadings, granted defendants the relief prayed for in their counterclaim, thus quieting title in the minerals in defendants. We sustain the action of the trial judge; indeed, it was the only action which reasonably could have been taken.

■ That an ambiguous judgment is subject to construction according to the rules that apply to all written instruments is well settled. In Huber et al. v. Newman, 106 Utah 363, 145 P.2d 780 (1944) this court construed a judgment which was rendered ambiguous because of its failure to relate reasonably to the conclusions of law. In Graham v. Graham, 174 Cal.App. 2d 678, 345 P.2d 316, 321 (1959) it was said:

If a court order or judgment admits of two constructions, that one will be adopted which is consistent with the judgment required by the facts and the law of the case [citations]. In construing a court order or judgment, resort may be had to the pleadings and findings.

■ Where construction is called for it is the duty of the court to interpret an ambiguity which will make the judgment more reasonable, effective, conclusive, and one which brings the judgment into harmony with the facts and the law. This we think the trial court did in the instant matter. (Paxton v. McDonald, 72 Ariz. 378, 236 P.2d 364, 367 (1951); Pennington v. Employers Liability Assurance Corp. (Alaska), 520 P.2d 96 (1974).) The trial judge took into consideration the situation to which the judgment was applied, and the purpose which was sought to be accomplished, Johnson v. Johnson, Okla., 460 P. 2d 954, 956 (1969).

The trial judge had ample evidence before him to sustain his action. To begin with, plaintiff initiated the original condemnation actions pursuant to a statute under which they could acquire no more than a right of way, viz., 73–1–6, and so alleged in its complaint. This allegation was never changed, and the first judgments of condemnation made no reference to any estate different from that alleged.

When the findings, conclusions and judgments rendered in September of 1963 were served on counsel for defendants, counsel noted that paragraph 6 of the findings rendered in the Hanson action made a reference to "fee simple land described above." He immediately called this language to the attention of counsel for plaintiff, to which plaintiff's counsel responded with a letter of instructions to plaintiff, with a copy to counsel for defendants. In part it is:

As I recall, during the trial it was stipulated that we did not condemn, indeed we could not condemn oil and mineral rights. Under the circumstances, in order to clear the record in this matter, please have executed and return to me as soon as convenient the enclosed quitclaim deed.

This letter was sent in December of 1963, two months after the final judgments of condemnation had been rendered and filed with their offending fee simple language. The deed alluded to in the letter concerned the Hanson land only, for the reason that it was only the Hanson findings which made reference to a fee simple title. The findings in the trustees' cause had no such reference. In addition, since these two matters were consolidated for

trial and tried as one the paragraph of the letter set out above would be equally applicable to both the Hanson and the trustees' cause.

The court had before it evidence of a stipulation made during the first trial, by counsel for plaintiff, that plaintiff was not condemning any of the minerals lying beneath defendants' ground. This evidence was in the form of testimony, (as well as in the letter above) and was corroborated by the evaluation report of an appraiser who testified in the first trial, which report stated that no value was placed on minerals, because the minerals were understood to be reserved to the owners.

█ Objection is made by appellant to the introduction of the parol evidence. It only needs to be said that here, as in other instances of ambiguities in written instruments, parol evidence may be resorted to to establish the truth of the matter.[1]

█ An interpretation, in consonance with the trial court's judgment, was made by the parties. It is clear from the record that plaintiff did not think it owned minerals, until it came time for the trustees to renew this oil lease covering the minerals here in issue. At that time, a land man for Shell Oil Co. informed plaintiff of the fee simple language in the judgment of October 1963. It is equally clear that the trustees thought they owned said minerals, because they had leased them and were moving to renew. The parties, by their action and performance demonstrated what their meaning and intent was. (Zeese v. Estate of Max Siegel et al., 534 P.2d 85, Utah 1975, and cases therein cited, f. n. 8.)

We think counsel for defendants had a right to rely on representations made to him, and the right to rely on the allegations in plaintiff's complaint. Particularly, in view of the fact the final judgments of condemnation were never served on him.

We note that it is the practice in this state for counsel to notify their opposition through the simple expedient of mailing to them copies of pertinent pleadings, and by making a certificate of such mailing a part of the pleading. This practice seems to have caused the disuse of 77(d), U.R.C.P., but that rule is available. Notice and opportunity to be heard is yet one of the foundation stones of our law.

For the reasons stated above the trial court is sustained. Costs are awarded to respondents.

TUCKETT, J., concurs.

HENRIOD, C. J., concurs in the main opinion, and also concurs in the views expressed in the concurring opinion of CROCKETT, J.

CROCKETT, Justice (concurring).

I concur in affirming the judgment, but think it desirable to make these observations:

█ It appears to be an indisputable fact that the judgment in the prior condemnation case sought only to condemn the property for the purpose of constructing a reservoir as authorized by Sec. 73–1–6, U. C.A.1953; and not to take fee simple title to the property. However, whether by inadvertence and mistake, or by ulterior design, the judgment actually entered such fee title for plaintiff Moon Lake. This was in excess of the authorization of the law, and went beyond the purpose of the proceeding and the stipulation of counsel therein. Even though the time for appeal elapsed and the judgment became final, it would and should have been subject to attack and correction for the reasons just stated. But there is a difficulty to be confronted in that no action has been brought to so correct or reform that judgment. Notwithstanding that fact, by taking a liberal view of the defendants' counterclaim in this action, as I think the interests of justice herein warrant, and particularly as aided by the prayer thereof, the counterclaim can be regarded as requesting that this be done.

---

[1]. 30 Am.Jur.2d Evidence, sec. 1079.

■ It likewise is to be recognized that the findings and judgment in this case do not purport to amend or correct the judgment in the prior case. Although in most circumstances the formal findings of fact and judgment supersede the prior decision of the trial court, where there is no conflict and they supplement each other as to essential findings, the written memorandum decision duly signed and entered by the trial court, can be looked to to augment and reinforce the findings.[1] In doing so here, it is seen that the trial judge, with commendable thoroughness and perspicacity, in his memorandum decision accomplished the purpose above set forth. He pointed out therein that the prior judgment did not conform to the intent and purpose of the condemnation proceeding; that it went beyond the authority of the court to enter such a judgment under the statute; and expressly stated that for those reasons the defendants were entitled to the benefit of amendment of that judgment as it should have been entered according to the stipulation of the parties and the applicable law.

For the foregoing reasons I join in affirming the judgment.

ELLETT, J., concurs in the views expressed in the concurring opinion of CROCKETT, J.

---

1. See 46 Am.Jur.2d, Judgments, Secs. 67 and 76; Rogers v. Harris, 76 Okl. 215, 134 P. 459.