Marilyn A. WILLIAMS, Plaintiff and Appellant,

v.

Ernest Alexander MILLER, Defendant and Appellee.

No. 890075–CA.

Court of Appeals of Utah.

June 1, 1990.

---

James L. Shumate, Cedar City, for plaintiff and appellant.

Willard R. Bishop, Cedar City, for defendant and appellee.

Before BILLINGS, GARFF and GREENWOOD, JJ.

## OPINION

GARFF, Judge:

Appellant Marilyn A. Williams appeals the trial court's denial of her motion for judgment on the verdict. We affirm.

Williams divorced appellee Ernest Alexander Miller in Las Vegas, Nevada on June 7, 1983. Prior to the parties' divorce, Miller's son, David C. Miller, had borrowed money from Miller, had repaid some of it, but had defaulted on the remainder. Williams, as part of the terms of their divorce decree, was awarded one-half of these loan proceeds.

The parties disagreed as to how much money David had borrowed from Miller and how much he owed at the time of the divorce. Williams introduced into evidence two assignments, indicating that David had borrowed amounts of $76,697.84 and $13,-000 from Miller, and testified that David had repaid about $10,000. The parties agreed that David had made no payments subsequent to June 7, 1983.

Regarding the $76,679.84 assignment, Miller and David testified that David had borrowed approximately $33,000 with no interest or fixed schedule of payments. They executed a written assignment for the purpose of enabling Miller to collect the amount of the loan, plus an arbitrary amount of interest, from David's estate in the event that he should die before repaying the loan. They testified that they intended the written assignment to otherwise be disregarded. They also testified that David had repaid all but about $14,000 of the $33,000 debt prior to the parties' divorce, and that, about one week before the divorce became final and without Williams's knowledge, they settled their accounts, determined that Miller owed David $20,000 from a joint farming venture, and cancelled out David's remaining $14,000 debt.

As to the $13,000 assignment, Miller and David testified that David had borrowed $12,000 from Miller to make a down payment on a house, did not purchase the house, and returned the $12,000 two or three days later. However, they had memorialized the loan by executing a similar assignment for $13,000, allowing $1,000 for interest in the event David should die prior to repaying the loan. Neither Miller nor David was able to document the amounts of the loans or their subsequent cancellations because of their "informal" family accounting methods.

Because David made no payments after the finalization of the divorce, Williams brought an action against David in 1984 to recover her share of the loan proceeds. She amended her action to include Miller as a defendant. David and Miller subsequently moved to dismiss and for summary judgment. In January 1988, Judge J. Phillip Eves dismissed the case as to David and denied Miller's motion for summary judgment on the grounds that the divorce decree was ambiguous as to whether Williams was entitled to one-half the amount of the debt or to only one-half of any payments made on it.

Williams demanded a jury trial to interpret the decree, which was presided over by Judge Ernest F. Baldwin. Following presentation of evidence by both parties, the jury found that David owed Miller $76,-697.84. Williams then moved for judgment on the verdict.

Judge Baldwin denied Williams's motion for judgment on the verdict on the grounds that, under the Nevada divorce decree, she was only entitled to one-half of any payments David might make on the indebtedness rather than one-half of the total amount of the indebtedness. Because David had made no payments, Williams was, therefore, not entitled to any proceeds under the verdict.

Williams brought this appeal, alleging that the trial court had failed to give full faith and credit to her Nevada divorce decree and that it erroneously denied her motion for judgment on the verdict.

■ The United States Constitution art. IV, sec. I requires that each state give full faith and credit to the judicial proceedings of every other state. We have traditionally found that this standard has been met when our courts "give the same effect to a decree that would be given by the state of its rendition." *Scott v. Scott*, 19 Utah 2d 267, 430 P.2d 580, 583 (1967); *see also Lamberth v. Lamberth*, 550 P.2d 200, 202 (Utah 1976); *Baggs v. Anderson*, 528 P.2d 141, 142 (Utah 1974). In so doing, we presume that the law of a sister state is the same as our law unless the contrary is shown. *Lamberth*, 550 P.2d at 201; *Baggs*, 528 P.2d at 142. As such, we must regard the parties' Nevada divorce decree as a final judgment and give it the same effect as any final judgment rendered in this state. Because the parties have not indicated that the relevant law is any different from ours, we rely on our law in making this determination.

During the hearing on Miller's motion for summary judgment, Williams asserted that the decree entitled her to one-half of the amount of the debt, regardless of whether any payments were made. Miller, on the other hand, interpreted the decree to mean that Williams was only entitled to one-half of any amounts David might pay on the debt. The operative language in the decree states that:

It is further ordered, adjudged and decreed that the Plaintiff receive as his sole and separate property the 1979 Chevrolet truck, 1988 Starfire boat and motor, and one-half of the loan payment (payments being deposited in Plaintiff's bank account), furniture and furnishings in his possession and his personal belongings.

It is further ordered, adjudged and decreed that the Defendant receive as her sole and separate property the 1977 Mercury, her retirement benefits, the household furniture and furnishings now in her possession, and one-half of the loan payment from David C. Miller (payments being deposited in Defendant's bank account), her personal belongings and effects.

Judge Eves found that the parties' decree was ambiguous and denied Miller's motion. He stated that:

[t]he Court being fully advised in the premises as to the facts and the law, and deeming that the Decree of Divorce out of Nevada could be interpreted as well one way as another, and deeming that if it were interpreted in Plaintiff's favor that a genuine issue of material fact remains for trial, ...

We do not defer to a trial court's conclusions of law, but review them under a correction of error standard. *In re D.S.K.*, 133 Utah Adv.Rep. 14, 16, 792 P.2d 118, 123 (Ct.App.1990). Language in a written document is ambiguous if its terms may be understood to support two or more plausible meanings. *Whitehouse v. Whitehouse*, 790 P.2d 57, 60 (Utah Ct.App.1990). Because the divorce decree simply stated that each party was entitled to one-half the loan payment and did not include any clarifying language as to whether it meant the entire obligation or only any payments that might be made on the obligation, we find that the decree could be understood to support either party's interpretation and, therefore, is ambiguous. Thus, we affirm Judge Eves's conclusion. We note that Judge Eves did not assail or reinterpret the

language of the divorce decree in making this determination, but simply found that the language of the decree was ambiguous, making it an inappropriate subject for a summary judgment. As such, he did not deny full faith and credit to it. After finding the decree ambiguous, he set the matter for further evidentiary hearing to determine its meaning.

█ If the language of a judgment is obscure or ambiguous, the rules that apply to the construction of ambiguous contracts apply. *Lucky Seven Rodeo Corp. v. Clark*, 755 P.2d 750, 753 (Utah Ct.App. 1988). The cardinal rule of interpretation is to give effect to the parties' intentions. *Heiner v. S.J. Groves & Sons Co.*, 790 P.2d 107, 110 (Utah Ct.App.1990). Therefore, extrinsic evidence as to the parties' intention may be received and considered, *Lucky Seven Rodeo Corp.*, 755 P.2d at 753, and "the entire record may be resorted to for the purpose of construing the judgment." *Park City Utah Corp. v. Ensign Co.*, 586 P.2d 446, 450 (Utah 1978).

█ Subsequently, a full evidentiary hearing was held, presided over by Judge Baldwin, to determine the meaning of the decree. The court reserved to itself the meaning of the decree as to whether Williams was entitled to one-half of the entire amount of the debt or only to one-half of any payments made on the debt. Two issues of fact were submitted to an advisory jury:[1] Whether David owed money to Miller and, if so, how much. Both parties testified, as did Miller's son, David. Evidence included Miller's testimony that Williams said that she wanted "half of whatever the loans—payments come in. Whatever payments come in, I want half of them." The only evidence to the contrary

was Williams's somewhat equivocal testimony that she was referring to "the $76,-697.84 minus $10,000 that had been paid on it," and that she "had asked [Miller] for half of the assignments [the debt] in exchange for signing off for the house," and her statements on cross-examination that she wanted and requested "half the payments on those documents as these came in," but did not only want "half of whatever comes in." The evidence was minimal, at best. Yet, it appears that the sketchy, self-serving testimony of both parties was all the evidence available to determine the issue. Following the hearing, the jury determined and the court found that David was indebted to Miller in the amount of $76,697.84.

On Williams's subsequent motion to enforce the judgment, Judge Baldwin interpreted the divorce decree on the basis of the evidence, his opportunity to view the parties and assess their credibility, and the parties' written motions and supporting memoranda. He found that the parties intended for Williams to have only one-half of any payments made by David to Miller.[2] Because Judge Baldwin also found that David had made no payments in connection with the indebtedness, he concluded that Miller had no funds subject to equal division with Williams pursuant to the divorce decree, and denied her motion for judgment.

We will not set aside a trial court's findings of fact unless they are against the clear weight of the evidence or we otherwise reach a definite and firm conviction that a mistake has been made, *Smith v. Linmar Energy Corp.*, 790 P.2d 1222, 1224 (Utah Ct.App.1990), and we give due regard to the trial court's opportunity to judge the credibility of the witnesses. *Ter-*

---

1. Miller argues that this case should not have been submitted to a jury for determination because this was an equitable matter and not a matter at law. We do not find it necessary to address this contention because the jury findings were not relevant to the dispositive issue of the case.

2. The relevant provision in Judge Baldwin's order reads as follows:
   5. The Nevada Decree of Divorce awarded Plaintiff one-half of any payments made by

David C. Miller to his father, ERNEST ALEXANDER MILLER, related in any way to the indebtedness owed by David C. Miller, to ERNEST ALEXANDER MILLER. The parties to the Nevada divorce action did not intend, and the Nevada Court did not purport, to award Plaintiff one-half of the debt, but only one-half of any payments made by David C. Miller to his father, ERNEST ALEXANDER MILLER.

*ry v. Price Mun. Corp.,* 784 P.2d 146, 147 (Utah 1989) (per curiam). A finding is clearly erroneous, whether the action is in equity or at law, *id.,* only if without adequate evidentiary support or induced by an erroneous view of the law. *Linmar Energy Corp.,* 790 P.2d at 1224.

We also note that Williams, as the proponent of the proposition that she was entitled to one-half of the debt rather than any payments, had the burden of proof, which she failed to carry. Further, in challenging Judge Baldwin's finding on appeal, she failed to perform her duty of marshalling all the evidence supporting the trial court's finding and then demonstrating that the finding was so lacking in support as to be against the clear weight of the evidence. *See Terry,* 784 P.2d at 148; *Linmar Energy Corp.,* 790 P.2d at 1224. We, therefore, find that Judge Baldwin's finding that Williams was entitled to only one-half of any payments made was not clearly erroneous.

Because this finding does not modify or otherwise change the Nevada decree of divorce, but is an interpretation of ambiguous language according to rules applicable in this state, we also find that the Nevada decree has been afforded full faith and credit.

Affirmed.

GREENWOOD and BILLINGS, JJ., concur.