**PROGRESSIVE ACQUISITION, INC.,**
**Defendant and Appellant,**

v.

**Ezra LYTLE and Mae Lytle,**
**Defendants and Appellees.**

No. 890587–CA.

Court of Appeals of Utah.

Feb. 13, 1991.

Michael D. Hughes, Michael A. Day, Thompson, Hughes & Reber, St. George, for defendant and appellant.

David Nuffer, Snow, Nuffer, Engstrom & Drake, St. George, for defendants and appellees.

Before BENCH, GARFF and GREENWOOD, JJ.

## OPINION

BENCH, Judge:

Progressive Acquisition appeals a summary judgment granted in favor of Ezra and Mae Lytle. This case was initiated by Mountain Fuel in order to condemn an easement across property subject to a trust deed naming the Lytles as beneficiaries. Subsequent to the initiation of this suit, and prior to the award of the condemnation proceeds, the property was sold at trustee's sale. The trial court ruled that the trustee's sale was valid and therefore awarded the entire condemnation proceeds to the Lytles as sole owners of the property. We affirm.

## FACTS

The Lytles were the original owners of the subject real property. In May of 1980, the Lytles sold the property to H. Clark Houston and Associates. The sale was financed by a note secured by a trust deed naming Houston as trustor and the Lytles as beneficiaries. In October of that year, Houston assigned its rights in the property to Progressive.

Progressive became delinquent on the note. A notice of default was filed with the county recorder in order to foreclose the trust deed pursuant to its power of sale provision and in accordance with Utah Code Ann. § 57-1-24 (1990). The notice of default also declared the entire debt immediately due and payable to the Lytles as permitted by the trust deed and note.[1]

Before the property was sold by trustee's sale, however, Progressive filed a petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Hawaii. Under section 362 of the Bankruptcy Code, the filing of the petition automatically stayed the impending foreclosure sale. 11 U.S.C. § 362(a). Approximately one year later, the Lytles moved the bankruptcy court for relief from the automatic stay in order to complete foreclosure on the property. The bankruptcy court denied Lytles' motion, but it did require that the Lytles be provided with "adequate protection" while the stay remained in effect.

The order for adequate protection required Progressive to pay within five days all delinquent interest owed to the Lytles, which amounted to $148,000. Progressive was also required to make twelve monthly interest payments of $7,598.45. The bankruptcy court ordered that if the lump sum

---

1. No challenge has been made to the initial effectiveness of the declaration of acceleration. We therefore view the declaration of acceleration found in the notice of default as having effectively accelerated the entire debt and look only to whether that acceleration was subsequently rendered ineffective.

and monthly payments were made, the stay would remain in effect for one year during which time Progressive could become "current on all delinquent installment payments due and payable under the *reinstated* Promissory Note" (emphasis added).

Progressive made the lump sum and monthly payments, but it was unable to become current within the allotted period. The Lytles again moved for relief from the stay, and the bankruptcy court gave Progressive an extension of time to become current. Progressive, however, was still unable to cure the default. The bankruptcy court then lifted the stay on June 29, 1988.

### UTAH COURT PROCEEDINGS

On September 12, 1988, Mountain Fuel initiated the present action to condemn an easement across the property for a gas line. Since no foreclosure sale had yet occurred, both Progressive and the Lytles were named by Mountain Fuel as defendants along with several others with possible interests in the property. Mountain Fuel asked the trial court to "determine and adjudicate the amounts, if any, to be paid to each of the defendants."

On September 28, 1988, the trustee executed and mailed a notice of trustee's sale scheduled for October 25, 1988. He did so without executing a new notice of default, choosing instead to rely on the prebankruptcy notice of default. When Progressive received the notice of sale, it notified the Lytles and the trustee that it viewed the scheduled sale to be defective absent a new notice of default. Progressive explained that it believed the note was "reinstated" by order of the bankruptcy court and requested that the notice of trustee's

sale be cancelled and a new notice of default be filed.

In response to Progressive's letter, Lytles' counsel sent a letter to Progressive indicating that he had reviewed the bankruptcy court's order and that he did not believe that the issue of "reinstatement," as that term is used in Utah Code Ann. § 57–1–31 (1990), was ever litigated, considered, or even at issue before the bankruptcy court. He indicated that such a statutory "reinstatement" could only occur when the trustor pays the entire delinquent amount then due. He concluded that because Progressive had never cured the default by paying the principal portion of the installments due under the terms of the note, the bankruptcy court had simply used the term "reinstatement" in a gratuitous manner and that the note had not been reinstated under Utah law.[2]

The trustee's sale proceeded as scheduled on October 25, 1988. The Lytles made the highest bid and the trustee deeded the property back to them. On November 11, 1988, the Lytles moved to be substituted in place of all other defendants claiming an interest in the property because the Lytles had, by virtue of the trustee's sale, succeeded to all interests of the other defendants. Progressive objected, arguing that its interest was not foreclosed by the trustee's sale. The trial court granted the motion as to all relevant defendants except Progressive.

The Lytles then moved for a summary judgment, claiming that Progressive had no interest in the condemnation award. In response, Progressive asserted that the trustee's sale was invalid. Progressive argued that the Lytles should have filed a new notice of default following the bankruptcy court's "reinstatement" of the note.

**2.** Both Lytles' counsel and the trial court were correct in concluding that Progressive was not entitled to reinstatement as a matter of right under section 57–1–31 because the delinquency was never fully satisfied in accordance with that section. The failure to satisfy the delinquency in full, however, does not prevent parties from mutually agreeing to settle a default and treat it as cured for a lesser amount. Progressive argued to the trial court that it agreed to pay the Lytles the $148,000 lump sum and the monthly

interest payments in exchange for the "reinstatement" of the note, and that it viewed the bankruptcy court's order to have been conditioned on the "reinstatement" of the note. Inasmuch as we hereinafter defer to the bankruptcy court's interpretation that its order providing adequate protection was not a "reinstatement," we need not address this issue of whether the note was reinstated in spite of the outstanding delinquencies.

Progressive did not contend that the Lytles were not entitled to receive the condemnation award pursuant to the trust deed, but rather, that Progressive was entitled to a credit against its indebtedness under the note.

In an effort to establish that the note had not been "reinstated" by the bankruptcy court, the Lytles moved the bankruptcy court to strike the term "reinstated" from its order requiring adequate protection. On January 18, 1989, the bankruptcy court interpreted the order as follows:

> By the phrase "reinstated promissory note," the Court did not mean that the note was reinstated under Utah law. The Court meant that the Court was de-accelerating payment on the note and that the debtor was to pay according to the orders of the Court and to cure the delinquent amounts within the one-year period. Thereafter, the debtor could either pay off the note, become current thereon or return the property to the Lytles. The Court did not intend to imply that the note was reinstated under Utah law because there was no discussion regarding the Utah law at the hearing on the motion for relief from stay.

Following this clarification by the bankruptcy court, the Utah court concluded that the trustee's sale was valid and granted Lytles' motion for summary judgment.

Progressive raises two issues on appeal. First, it challenges the summary judgment because it was based upon the trial court's conclusion that the trustee's sale was valid, and, Progressive argues, the validity of that sale was not properly before the trial court. In the alternative, Progressive claims the trial court erred in concluding that the trustee's sale was valid when the

Lytles did not reaccelerate the note after its purported deacceleration by the bankruptcy court.

## WAS THE VALIDITY OF THE SALE BEFORE THE COURT?

■ Progressive claims that the trial court should not have addressed any issue other than which party should receive the condemnation award and therefore erred in declaring the trustee's sale valid. Progressive, however, did not object at trial to the court's consideration of the validity of the trustee's sale. "It is axiomatic that matters not presented to the trial court may not be raised for the first time on appeal." *Franklin Fin. v. New Empire Dev. Co.*, 659 P.2d 1040, 1044 (Utah 1983). We therefore do not consider Progressive's argument.

## THE TRUSTEE'S SALE

■ Progressive argues in the alternative that the trustee's sale was invalid because the Lytles never reaccelerated the note after it was purportedly deaccelerated by the bankruptcy court. The Lytles respond by arguing that the note was never "reinstated" by the bankruptcy court. The trial court concluded that the note was neither "reinstated" nor "deaccelerated." [3] Review of the trial court's conclusion as to the legal effect of the bankruptcy court's orders presents a question of law. We therefore give no particular deference on review to the trial court's conclusions as to whether the note was "reinstated" or "deaccelerated." *See, e.g., Fred Meyer v. Industrial Comm'n*, 800 P.2d 825, 827 (Utah

---

**3.** The confusion in this matter is due to the fact that the parties and the trial court have both used the terms "reinstatement" and "deacceleration" as if they were interchangeable. They are not. "Reinstatement," as it is used in section 57–1–31, is the curing of the default. In other words, the parties are returned to their former status as if the default had never occurred. If a trustor subsequently defaults again, the beneficiary must begin new foreclosure proceedings. It may not rely on the previous notice of default and declaration of acceleration. Deacceleration, on the other hand, is the undoing of the

acceleration itself. The parties are returned to their preacceleration status as if the beneficiary of the trust deed had not opted to accelerate the entire debt. The default, however, remains unchanged and the notice of default would still be in effect. A beneficiary could still foreclose, but it would only be for the amount of the delinquent payments, costs, and so forth. The note would remain in effect to the extent not satisfied from the sale proceeds and the trustor would retain any property not sold to satisfy the delinquency.

Ct.App.1990) (judicial intent is a question of law).

We begin our analysis of the bankruptcy court's orders by recognizing that the trial court was precluded from reinterpreting the bankruptcy court's order providing for a continuation of the stay contingent upon Progressive providing adequate protection to the Lytles. The parties had already litigated the issue of whether that order "reinstated" the note when the Lytles sought to have the term "reinstated" stricken from the order providing them adequate protection.[4] Inasmuch as we are not reviewing the correctness of the bankruptcy court's interpretation of the order, we likewise defer to the bankruptcy court's interpretation issued January 18, 1989. The proper construction of the bankruptcy court's January 18th interpretation, however, had not been previously litigated and was therefore properly before the trial court and is now the issue before us.

In construing the bankruptcy court's interpretation of the order, the trial court should have looked first to whether the interpretation was ambiguous. "An ambiguous judgment is subject to construction according to the rules that apply to all written instruments." *Park City Utah Corp. v. Ensign*, 586 P.2d 446, 448 (Utah 1978). *See also Moon Lake Water Users Ass'n v. Hanson*, 535 P.2d 1262, 1264 (Utah 1975). An order is ambiguous if it is subject to two plausible constructions. *Moon Lake*, 535 P.2d at 1264. Any ambiguity is corrected by adopting the construction "which will make the judgment more reasonable, effective, conclusive, and [the] one which brings the judgment into harmony with the facts and the law." *Id.*

We conclude that the bankruptcy court's interpretation was not ambiguous in its declaration that the order providing adequate protection did not "reinstate" the note under Utah law. Its statement that it was "de-accelerating payment on the note," however, was ambiguous. The bankruptcy court's use of the term "de-accelerating" is therefore the determinative issue on appeal. If the term was used to indicate that the original declaration of acceleration was rendered ineffective, then the subsequent trustee's sale was flawed in that it should have been limited to the amount of the delinquent payments. If, on the other hand, the debt was still due in full to the Lytles, then the trustee's sale was valid insofar as it was challenged below.

If the statement that "the court was de-accelerating payment on the note" is considered in isolation, then a plausible construction of the bankruptcy court's interpretation would be that the initial declaration of acceleration found in the notice of default was no longer effective. This language, however, is not isolated. It must be interpreted in the context of the remainder of the order. The order further explains that the automatic stay was modified so that at the end of the one year stay, Progressive could "either *pay off the note*, become current thereon *or return the property to the Lytles*" (emphasis added). Progressive would not need to pay off the note or return the property to the Lytles if the entire debt was not then due and payable. Another plausible construction of the order, therefore, is that if Progressive failed to cure the delinquencies within the time allowed, it would still be liable for the entire accelerated amount.[5]

In choosing which of the foregoing interpretations to adopt, we look at the situation to which the orders were applied and the

---

**4.** In *Madsen v. Borthick*, 769 P.2d 245 (Utah 1988), the Utah Supreme Court set forth four requirements needed for issue preclusion: 1) the issue in both cases must be identical; 2) the judgment must be final with respect to that issue; 3) the issue must have been fully, fairly, and competently litigated in the first action; and 4) the party who is precluded from litigating the issue must be either a party to the first action or a privy of a party. *Id.* at 250. All of these conditions were clearly met in the present case.

**5.** This interpretation is similar to the effect of the three-month waiting period required by section 57–1–24(2). The debt has been accelerated, but the beneficiary may not enforce that acceleration for three months, during which time the debtor may cure the default and "reinstate" the trust deed as provided under section 57–1–30.

purpose which was sought to be accomplished. *Moon Lake*, 535 P.2d at 1264.

The situation before the bankruptcy court was that the Lytles were seeking relief from the automatic stay. The automatic stay had not altered the status of the foreclosure proceedings, it had only delayed them. *McCarthy v. Lewis*, 615 P.2d 1256, 1259 (Utah 1980) (the right to sell property in foreclosure proceedings is a substantive right of the beneficiary which is unaffected by the automatic stay). At the time Progressive filed for bankruptcy, Progressive owed the Lytles the entire debt. This right to the entire accelerated debt is a substantive right.[6] Since the stay did not diminish Lytles' substantive rights, the stay did not deaccelerate Progressive's debt.

The purpose of the order was to protect the Lytles' financial position while the stay was in effect and to extend the period during which Progressive could cure the default. It was not intended to deprive the Lytles of the benefit of their previous declaration of acceleration. The bankruptcy court's interpretation of the order sought to make this clear.

Inasmuch as any enforcement of the acceleration was stayed, and since the main purpose of the order was to adequately protect the Lytles, not harm them, we conclude that the bankruptcy court's reference to deacceleration was merely a recognition that the enforcement of Lytles' rights arising from the acceleration of the debt was stayed during the one-year period. Furthermore, if Progressive failed to cure the delinquencies within the period allotted, the stay would be lifted and the entire debt would once again be due and payable to the Lytles.[7]

We hold that the entire debt was accelerated prior to the initiation of the stay, but that the Lytles could not enforce the acceleration until the stay was lifted. Once the stay was lifted, the entire amount was again immediately due and payable. The notice of default filed before the initiation of bankruptcy proceedings was still in effect, as was the original declaration of acceleration found therein. The Lytles were therefore not required to reaccelerate the entire debt before proceeding with their trustee's sale. The trial court's construction of the bankruptcy court's interpretation, while it does not address the question of ambiguity, is consistent with the foregoing analysis. We therefore affirm the trial court's summary judgment granting the entire condemnation award to the Lytles.[8]

GARFF and GREENWOOD, JJ., concur.

---

6. Acceleration is a substantive right because it provides a beneficiary with the power to bring a single foreclosure action upon default, thereby satisfying the entire obligation and discharging the note, rather than bringing repeated collection actions each time a trustor defaults. The beneficiary thereby avoids the burden of repeated foreclosures as well as the risk that the security for the debt, the property, will be consumed by legal fees, court costs, unpaid interest, etc., before the debt is satisfied.

7. Had the bankruptcy court believed that its order had effected a complete and permanent deacceleration, it would have said so. Instead of stating that Progressive would be required to pay off the note or return the property to the Lytles if it did not become current prior to the end of the stay, it would have stated that the Lytles would be free, once the stay was lifted, to reaccelerate the debt and continue with the foreclosure initiated by the prebankruptcy notice of default.

8. Progressive was concerned below and on appeal that the trial court's blanket declaration that the trustee's sale was valid would preclude it from raising other challenges to its validity that were not a part of the pleadings but were mentioned without significant discussion below. We therefore clarify that only the question of acceleration is resolved by this opinion. *See, e.g., Terry's Sales, Inc. v. Vander Veur*, 618 P.2d 29 (Utah 1980) (where trial court in interpleader action made no adjudication on claims as between former partners, but rather, merely recognized that the controversy was pending in another suit, judgment in interpleader action had no res judicata effect upon such suit).