Nadine LYNGLE, Plaintiff, Appellee
and Cross–Appellant,

v.

Charles LYNGLE, Defendant, Appellant
and Cross–Appellee.

Nos. 910057–CA, 910059–CA.

Court of Appeals of Utah.

April 9, 1992.

Larry A. Kirkham (argued), Nygaard,
Coke & Vincent, Salt Lake City, for
Charles Lyngle.

Randy S. Ludlow, Salt Lake City (argued), for Nadine Lyngle.

Before BENCH, BILLINGS, and RUSSON, JJ.

BILLINGS, Associate Presiding Judge:

Charles Lyngle (Husband) and Nadine Lyngle (Wife) both appeal the trial court's rulings involving an Order to Show Cause brought by Wife alleging Husband failed to comply with some of the provisions of the parties' divorce decree. We affirm.

## FACTS

In 1985, Husband and Wife agreed to end their marriage of thirty-six years. After discussing property division, Husband and Wife mutually sought the advice of attorney Oliver Myers to obtain an uncontested divorce.

Wife subsequently filed a complaint for divorce on November 26, 1985. The complaint stated Wife should be awarded, in part: (1) "The proceeds of the condominium located at 3000 Connor Street, No. 4 in Salt Lake City, Utah; said real property shall be free of all encumbrances and the gross proceeds shall not be less than $250,000;" (2) "[t]he proceeds of the joint stock account at First Affiliated Securities, said proceeds shall not be less than $44,000.00;" and (3) "[t]he Lyngle Brothers note dated November 1, 1985 in the amount of $30,-000, three year term 11% interest payable quarterly." The complaint further requested Husband to "execute a promissory note payable to [Wife] in the amount of $30,-000.00 with payments of $500.00 per month with no interest" in order "to equalize the division of property" between the parties. Husband executed an "Appearance and Waiver of Service," consenting to a default divorce.

A decree of divorce was entered March 12, 1986, awarding Wife, in part: (1) "[T]he proceeds from the condominium," (2) "the proceeds from the joint stock account," (3) "the Lyngle Brothers note," and (4) "a no interest promissory note" in the amount of $30,000.00.

Approximately one year after the divorce, Wife contacted attorney Irene Warr to ask assistance in resolving some terms of the divorce decree that remained incomplete. First, at Wife's request, Ms. Warr drafted the $30,000.00 "equalizing" promissory note. Next, Wife was willing to relinquish her interest in the condominium. Husband paid Wife $170,000.00 in cash. Wife also acknowledged $31,491.12 in cash Husband had previously paid to refurbish Wife's new home and a check from Husband in the amount of $8,508.88, for a total cash amount of $210,000.00. Ms. Warr also drafted a second $30,000.00 promissory note from Husband to Wife. Wife and Ms. Warr testified that Wife had, thus, relinquished all interest in the condominium in exchange for a total of $240,000.00, and Wife did not plan to pursue collection of the remaining $10,000.00 to which she was entitled according to the divorce complaint. Wife also executed a "Partial Satisfaction of Judgment," dated February 12, 1987, in which she surrendered all interest in the condominium.

Through Wife's efforts as a professional realtor, Husband sold the condominium on October 22, 1987 for $220,000.00, receiving net proceeds of $205,757.50.

In December 1987, Wife again contacted Ms. Warr for assistance, claiming Husband had not paid her the $44,000.00 proceeds from the joint stock account and the $30,-000.00 Lyngle Brothers note. Ms. Warr subsequently drafted a demand letter to Husband for these items. When Husband failed to comply, Wife filed an Order to Show Cause in July 1988, and an evidentiary hearing was scheduled before the trial court.

At the hearing, Wife claimed Husband owed her $44,000.00 as proceeds from the joint stock account and the $30,000.00 Lyngle Brothers note. However, Wife acknowledged that she was waiving the $10,-000.00 which remained owing to her from the proceeds of the condominium. Husband claimed Wife was entitled to only $4,953.00, the amount in the joint stock account as of the date of the divorce decree. Husband further contended that, be-

cause one of the two promissory notes prepared by Ms. Warr was actually a substitute for the $30,000.00 Lyngle Brothers note, the Lyngle Brothers note had been paid in full. Finally, with respect to the condominium, Husband claimed Wife had already received a total of $210,000.00. Because the proceeds of the condominium, to which Wife was entitled under the divorce decree, were only $205,757.50, Husband claimed Wife had been overpaid.

The trial court awarded a judgment against Husband for $44,000.00, plus interest dating from February 26, 1986, representing the joint stock account. The trial court further determined the Lyngle Brothers note had been paid in full by the substituting of the note Ms. Warr drafted. The court also ruled that, due to Husband's payments to Wife totaling $210,000.00, Wife had been overpaid in the amount of $4,242.50 with respect to the condominium proceeds. Finally, the court awarded Wife this overpayment of $4,242.50 in lieu of Wife's requested attorney fees and costs.

On appeal, Husband claims the trial court erred by: (1) Awarding Wife $44,000.00 instead of $4,953.00 as proceeds of the joint stock account, and (2) awarding Wife $4,242.50 as attorney fees. Wife also appeals, claiming the trial court erred by failing to award her the proceeds from the $30,000.00 Lyngle Brothers note.

## JOINT STOCK ACCOUNT

The divorce decree awards Wife "the proceeds from the joint stock account." Husband claims the unambiguous language of the decree provides Wife is entitled to the funds in the joint stock account which, as of the date of the divorce decree, amounted to $4,953.00. Husband, thus, claims the trial court erred in awarding Wife $44,000.00. Wife responds that the decree is ambiguous and incomplete. Therefore, the trial court correctly resorted to extraneous evidence, including the more explicit verified divorce complaint, to determine the meaning of the language in the decree.

Whether a document is ambiguous is a question of law, *see Larson v. Overland Thrift and Loan*, 818 P.2d 1316, 1319 (Utah App.1991), which we review for "correctness," *Van Dyke v. Chappell*, 818 P.2d 1023, 1024 (Utah 1991), according "no particular deference" to the trial court's conclusion. *Christensen v. Munns*, 812 P.2d 69, 70 (Utah App.1991). However, once the trial court determines a document is ambiguous and "proceeds to find facts respecting the intentions of the parties based on extrinsic evidence, then our review is strictly limited." *Kimball v. Campbell*, 699 P.2d 714, 716 (Utah 1985). We then " 'review the evidence and all inferences that may be drawn therefrom in a light most supportive of the findings of the trier of fact' " and will not disturb the trial court's judgment if it is " 'based on substantial, competent, admissible evidence.' " *Id.* (quoting *Car Doctor, Inc. v. Belmont*, 635 P.2d 82, 83–84 (Utah 1981)); *accord West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1313 (Utah App.1991).

A document is ambiguous "if it is subject to two plausible constructions," *Progressive Acquisition, Inc. v. Lytle*, 806 P.2d 239, 243 (Utah App.1991), or its terms are so incomplete they create confusion as to its meaning.

Although not specifically stating so, the trial court, by its treatment of the matter, concluded the language of the divorce decree was ambiguous as to the amount intended to be paid to Wife as proceeds from the joint stock account. We agree.

When a judgment is "obscure or ambiguous, the entire record may be resorted to for the purpose of construing the judgment." *Park City Utah Corp. v. Ensign Co.*, 586 P.2d 446, 450 (Utah 1978); *accord Land v. Land*, 605 P.2d 1248, 1251 (Utah 1980). The court must then adopt a construction " 'which will make the judgment more reasonable, effective, conclusive, and ... which brings the judgment into harmony with the facts and the law.' " *Park City*, 586 P.2d at 450 (quoting *Moon Lake Water Users Ass'n v. Hanson*, 535 P.2d 1262, 1264 (Utah 1975)). In resolving an ambiguity, it is appropriate to consider both the context in which the document

applies and the "purpose which was sought to be accomplished." *Progressive Acquisition*, 806 P.2d at 244. Furthermore, because "[t]he cardinal rule of interpretation is to give effect to the parties' intentions," *Williams v. Miller*, 794 P.2d 23, 26 (Utah App.1990), when a divorce decree is ambiguous "extrinsic evidence as to the parties' intention may be received and considered." *Id.*

■ The trial court considered the following extrinsic evidence and determined the parties intended $44,000.00 to be paid to Wife as "the proceeds from the joint stock account." The verified divorce complaint stated Wife should be awarded "[t]he proceeds of the joint stock account at First Affiliated Securities, said proceeds shall not be less than $44,000.00."[1] Mr. Myers, who drafted both the complaint and the decree, testified it was his intent "at all times to have the complaint ... be the same as the decree." He also testified Husband and Wife had "an understanding that the value of stock changes up and down," and the specific figure of $44,000.00 was placed in the complaint to protect Wife "[f]rom diminution of the value of the stock in the account." Mr. Myers stated the $44,000.00 figure was omitted from the decree "[b]ecause of the understanding of the parties that it would not be less than $44,000.00 as given forth in the complaint." Husband testified that, at the time Husband and Wife sought Mr. Myers's assistance in obtaining a divorce, there was $44,000.00 in the joint stock account.[2]

The trial court properly looked to extraneous evidence to determine the amount to which Wife was entitled under this provision of the decree. This evidence clearly supports the trial court's interpretation of this provision of the decree. We, therefore, affirm the award of $44,000.00 to Wife as proceeds of the joint stock account, with interest from March 12, 1986.[3]

## ATTORNEY FEES

Husband also appeals the trial court's award to Wife of attorney fees incurred in bringing the Order to Show Cause, claiming there were no findings of need or reasonableness.

■ Husband first claims an award of attorney fees in this action must be supported by evidence of Wife's financial need. However, Husband fails to comprehend the nature of these proceedings. In this suit, Wife is not seeking to obtain or modify a divorce decree but to enforce the provisions of a decree she obtained in 1986. In an action to enforce the provisions of a divorce decree, an award of attorney fees is based solely upon the trial court's discretion, regardless of the financial need of the moving party.[4]

---

1. Husband relies upon the doctrine of merger, stating "when a valid and final judgment for the payment of money is rendered, the original claim is extinguished." *Yergensen v. Ford*, 16 Utah 2d 397, 402 P.2d 696, 697 (1965); *accord Adams v. Davies*, 107 Utah 579, 156 P.2d 207, 209 (1945). Therefore, Husband argues any claims embodied within the divorce complaint were merged within the divorce decree. This argument is without merit as the trial court did not enforce the complaint but used it, along with other extrinsic evidence, to determine the meaning of the ambiguous divorce decree.

2. Finally, Husband argues that any amounts he owed Wife under the decree, including the proceeds from the joint stock account, were resolved by Wife's execution of a release of her interest in the stock account, an "Acknowledgement of Payment," and a "Partial Satisfaction of Judgment," and payments he made to Wife in 1987 when he signed the documents Ms. Warr prepared. He further argues Wife has waived

or is estopped from asserting additional claims under the divorce decree or that her claims should be barred by the equitable doctrine of laches. We do not address these arguments in detail as we find them without merit and affirm the trial court's determination on these issues.

3. Both parties agree the date upon which the interest begins should be corrected to March 12, 1986, the date of the divorce decree.

4. *See, e.g., Beardall v. Beardall*, 629 P.2d 425, 427 (Utah 1981) (court upheld "trial court's exercise of its discretion" in awarding attorney fees to wife seeking to enforce divorce decree without evidence of wife's financial need); *McKay v. McKay*, 13 Utah 2d 187, 370 P.2d 358, 359 (1962) ("[I]t is within the [trial] court's discretion to determine whether a person is in contempt of court for failure to comply with the terms of a divorce decree and whether attorney's fees should be allowed in such a proceeding....");

Husband also claims the trial court erred in its award of attorney fees as there was no determination of reasonableness. During the evidentiary hearing, Wife's counsel proffered a claim for $3,350.00 in attorney fees. At this time, Husband's counsel stipulated that such fees were "reasonable." After the hearing, Wife's counsel proffered a claim for additional fees of $1,625.00, calculated at the same rate as those submitted during the hearing, incurred in preparation for closing argument. Wife, thus, requested attorney fees totaling $4,975.00.

■ Husband stipulated to the reasonableness of Wife's attorney fees during the evidentiary hearing. Additional fees proffered after the hearing were calculated at the same rate. Furthermore, the trial court specifically found Wife's attorney fees "reasonable and just," in view of community standards and the complexity of the case. We, therefore, conclude the trial court's award of attorney fees to Wife was proper.

■ Wife seeks an award of attorney fees on appeal. Generally, when the trial court awards fees in a domestic action to the party who then substantially prevails on appeal, fees will also be awarded to that party on appeal. *See Crouse v. Crouse,* 817 P.2d 836, 840 (Utah App.1991).[5] The trial court properly awarded Wife attorney fees, and Wife has prevailed, in large part, on appeal. Therefore, we award Wife attorney fees on appeal and remand for entry of reasonable fees.

## LYNGLE BROTHERS NOTE

■ Wife claims she has never received payment for the Lyngle Brothers note as required in the divorce decree. Wife testified she initially sought Ms. Warr's counsel in early 1987 concerning only two provisions in her divorce decree, neither of which involved the Lyngle Brothers note. First, because the $30,000.00 "equalizer" note had never been created, Wife requested Ms. Warr to draft one. Second, because Wife and Husband had modified their understanding with respect to the condominium months before it sold, she requested Ms. Warr to draft documents reflecting that modification. Therefore, Wife testified none of the documents Ms. Warr prepared served as a substitute for the Lyngle Brothers note—it remained outstanding.

Husband testified the 1987 transactions resolved his obligation to pay the Lyngle Brothers note. He testified that when he went to Ms. Warr's office to sign additional documents, Ms. Warr did not explain that the $30,000.00 promissory note she prepared concerned the condominium. Rather, according to Husband, Ms. Warr told him the note was a substitute for the Lyngle Brothers note, and he "would clear up [his] entire divorce" with a check for $8,508.88, which he immediately wrote. Husband points to the memo on this check, "Bal on Div Set," as evidence of the fact that he had completed all of his obligations under the divorce decree when he wrote this check. Husband further testified he paid this substitute note in full. The trial court, agreeing with Husband, stated, with our emphasis:

> The proceeds from the sale of the home should be determined from the time the house was actually sold, that is: $205,757.50.... [T]he amounts paid for the down payment and fix up of the new condominium of $31,491.12, loan proceeds of February 1987 of $170,000.00, and the balance from [Husband] Febru-

*Stuber v. Stuber,* 121 Utah 632, 244 P.2d 650, 652 (1952) (In wife's suit to enforce alimony payments, court stated: "It was [her ex-husband's] failure to live up to his agreement which forced her to commence this action. There can be no doubt that attorney's fees are allowable in actions of this type."); *Tribe v. Tribe,* 59 Utah 112, 202 P. 213, 216 (1921) (When one party "is compelled to bring proceedings against" another to enforce compliance with a divorce decree, a trial court may award reasonable attorney fees to the moving party so that party is not forced "to fritter away in costs and counsel fees" funds received under the decree "by bringing repeated actions.").

5. *See also* Utah Code Ann. § 30–3–3 (1989); *Bagshaw v. Bagshaw,* 788 P.2d 1057, 1061 (Utah App.1990) ("We may order either party to pay attorney fees under Utah Code Ann. § 30–3–3 (1989), and this includes attorney fees incurred on appeal.").

ary 1987, check number 376, of $8,508.88 totaling $210,000.00 is $4,242.50 over the net proceeds of the sale of the house.

. . . .

As for *the Lyngle Brothers note under paragraph 4.c. of the Decree of Divorce,* defendant's Exhibit 7, promissory note, dated the 4th day of February, 1987, *has been paid in full,* this satisfies this obligation. This is consistent with the Court's finding and determination regarding paragraph 4.a. of the Decree of Divorce relating to the proceeds from the condominium.

Wife claims the trial court erred in concluding the Lyngle Brothers note had been paid because its interpretation of the provision of the decree awarding her the "proceeds from the condominium" was in error. The trial court determined she should receive the actual net proceeds from the sale of the condominium, $205,757.50. Wife claims this was an improper interpretation of the decree. She points out that the divorce complaint stated Wife should receive no less than $250,000.00 as proceeds of the condominium. At the hearing, Wife testified that, at Husband's request, she agreed to quit-claim to Husband all of her interest in the condominium in exchange for $31,491.12 in cash Husband paid in November of 1985, a promissory note for $170,000.00 Husband paid in February of 1987, a check for $8,508.88 Husband paid in February of 1987, and a promissory note for $30,000.00, for a total of $240,000.00. Wife requested Ms. Warr to draft the quit-claim deed and the $30,000.00 promissory note to correspond with Wife's and Husband's new agreement concerning the condominium. Therefore, believing she was entitled to receive $250,000.00 as proceeds from the condominium, Wife, nevertheless, consented to receive $240,000.00 under this compromise and not pursue the remaining $10,000.00.

Wife argues the trial court found the term "proceeds" ambiguous with respect to the joint stock account and looked to the complaint, among other items, to determine its meaning. Wife claims the award of "proceeds" of the condominium is similarly ambiguous, should be treated in the same manner, and the trial court erred in not doing so.

The record clearly reveals the trial court did not consider the phrase "proceeds of the condominium" ambiguous. The court stated:

The proceeds from the sale of the home should be determined from the time the house was actually sold, that is: $205,757.50. Where the amount is not stated on real property, which is not a liquid asset, the proceeds normally are considered to be what the house sells for based on the highest and best offer made within a reasonable time period. Although the value may fluctuate, the value of the house normally cannot be dissipated by one of the parties at the expense of the other. In addition, both parties have a measure of control because their respective interests must usually be conveyed by a deed. Therefore, the amounts paid for the down payment and fix up of the new condominium of $31,491.12, loan proceeds of February 1987 of $170,000.00, and the balance from [Husband] February 1987, check number 376, of $8,508.88 totaling $210,000.00 is $4,242.50 over the net proceeds of the sale of the house. This amount should be credited to defendant in lieu of his attorney's fees. Thus, paragraph 4.c. of the Decree of Divorce will be fully satisfied.

We do not find fault with the trial court's determination as to "the proceeds of the condominium." [6] The trial court concluded Husband paid the Lyngle Brothers note in the process of completing the transactions for which Wife engaged Ms. Warr. Based

---

**6.** Because we cannot say, as a matter of law, that the phrase "the proceeds from the condominium" in the decree is ambiguous or that the trial court's determination that it meant net proceeds after sale is error, we are constrained to disregard extraneous evidence of its meaning.

However, were we free to consider such evidence, we would find the complaint and the testimony of Wife and Ms. Warr persuasive concerning the purpose of the documents Ms. Warr prepared and the funds to which Wife was entitled under the decree.

on the record before us, we cannot say the trial court abused its discretion by accepting Husband's version of the facts. We are not free to substitute our judgment for that of the trial court. Therefore, we affirm the trial court's determination that Husband paid Wife the Lyngle Brothers note in full.

## CONCLUSION

In sum, we conclude that because the divorce decree is ambiguous with respect to the provision concerning "the proceeds from the joint stock account," the trial court properly considered extraneous evidence and, based on that evidence, awarded Wife $44,000.00. Further, the trial court did not abuse its discretion in awarding Wife attorney fees of $4,242.50. Finally, we find no error in the trial court's determination that Husband has paid the Lyngle Brothers note in full.

RUSSON, J., concurs.

BENCH, Presiding Judge (concurring in part and dissenting in part):

I concur with the result reached in the main opinion regarding the joint stock account and the Lyngle Brothers note. I dissent, however, from the awards of attorney fees.

If the decree is ambiguous, as the majority holds, how can fees be awarded to Wife on the theory that Husband did not comply with the decree? He was in compliance with one of the plausible interpretations of the decree. This action is simply a clarification of what the decree provided. Since there has been no showing of need, attorney fees are not awardable either at trial or on appeal. The award of attorney fees on appeal is particularly troublesome in view of the failure of Wife's cross-appeal.

I would reverse the attorney fee award and deny fees on appeal.