DeLynne N. SCHINDLER, Plaintiff and Respondent,

v.

John E. SCHINDLER, Defendant and Appellant.

No. 880355–CA.

Court of Appeals of Utah.

June 6, 1989.

Don R. Peterson, Leslie W. Slaugh, Provo, for defendant and appellant.

B.L. Dart, John D. Schaeffer, Jr., Salt Lake City, for plaintiff and respondent.

Before BENCH, GARFF and ORME, JJ.

## OPINION

GARFF, Judge:

Defendant/appellant, John E. Schindler, appeals the trial court's judgment awarding plaintiff/respondent, DeLynne N. Schindler, alimony and custody of the parties' two children. We affirm.

Appellant and respondent married on August 17, 1973, divorced in January 1980, and subsequently remarried on July 20, 1981. Two male children were born during the second marriage: John Christian (Chris) and Cory Lynn. These boys were, respectively, ages 4 and 3 at the time of trial.

Appellant's gross monthly income at the time of trial included a salary of $2,360 for his work as a deputy county attorney, private law practice income of $500, and contract income of $206. Respondent had been an elementary school teacher prior to and during the marriage, until Chris's birth. She did not work outside the home afterwards, and was unemployed at the time of trial. At the time of trial, respondent's monthly income consisted of $400 temporary maintenance paid by appellant and $500 per month from her parents, in contrast to her claimed monthly needs of about $2,500 per month. Appellant claimed living expenses totaling $3,360 per month, $1,492 of which was attributable to debts established in the temporary custody hearing. The parties acquired a home and other real property during the marriage, none of which had any appreciable equity.

The parties separated on February 14, 1987. A hearing on the issues of temporary custody and support was held on March 4, 1987, and resulted in an order awarding temporary custody of the children, exclusive use and occupancy of the marital residence, and $400 per month temporary maintenance to respondent.

At trial, appellant relied on expert testimony presented by Dr. Lynn Ravsten and Dr. Ralph Vanderlinden, both licensed psychologists with whom the parties had participated in marriage counseling during 1986 and 1987, to support his position that he should be awarded custody of the children because respondent's behavior was emotionally damaging to them.

Ravsten testified that Chris had a "very severe oppositional behavior problem" resulting in resistive and aggressive behavior, was much more aggressive than most boys his age, had a mood problem of anger and sadness, and was alienated. He found that Cory did not have these problems because he was too young. Invoking ethical restrictions because he had not observed respondent and the boys together, Ravsten testified only concerning the theoretical background of aggressive behavior, rather than finding respondent's behavior to be the cause of Chris's problems. He stated that he did not have any reservations about appellant as a custodial parent, but cautioned that he did not intend this as a comparative statement with respect to respondent's capability as a custodial parent.

Appellant sought to elicit testimony from Vanderlinden as to which parent would be the best permanent custodial parent. Respondent's counsel objected on the grounds that Vanderlinden had not evaluated the children nor seen them interact with respondent. Upon voir dire examination, Vanderlinden stated that, prior to the initial hearing, he had promised respondent he would not testify as to which party was the better parent. He also admitted that he had not counseled with the children, tested them, nor observed them interact with respondent. Therefore, the judge sustained respondent's objection and did not allow Vanderlinden to give an opinion as to which party would be the better permanent custodian. However, he did allow Vanderlinden to compare the parties' general personality characteristics.

The trial court awarded custody of the children to respondent and ordered appellant to pay $400 per month child support. Further, it ordered appellant to pay the $875 per month mortgage payment until the house was sold and, then, permanent alimony of $500 per month. Appellant was also to assume debts with payments in excess of $700 per month, while respondent was ordered to pay other debts in the amount of $539 per month. The court en-

tered its written factual findings and decree of divorce on March 4, 1988.

Appellant filed a motion for a new trial on March 14, 1988, alleging that the trial court abused its discretion in excluding part of Vanderlinden's testimony, that he was surprised by Vanderlinden's previous promise to respondent not to testify, and that the evidence was insufficient to support the trial court's custody and alimony awards. Appellant's affidavit accompanying the motion indicated that he had met with Vanderlinden several times to discuss the upcoming trial, that Vanderlinden had given no indication that he had made such a promise, and that appellant could not have anticipated Vanderlinden's restricted testimony. Vanderlinden also submitted an affidavit in which he indicated that the children's long term interests would best be served by awarding their custody to appellant because respondent's psychological problems detracted from her parenting ability.

The trial court denied appellant's motion for a new trial. Appellant brought this appeal in which he raises the following issues: (1) Was the trial court's award of custody to respondent an abuse of discretion in that it was against the weight of the evidence? (2) Did the trial court err in excluding Vanderlinden's testimony? (3) Did the trial court abuse its discretion in denying appellant's motion for a new trial? (4) Did the trial court abuse its discretion in awarding respondent alimony?

## CUSTODY

■ In making child custody awards, the trial court is given broad discretion, *Davis v. Davis*, 749 P.2d 647, 648 (Utah 1988), and its decisions will not be overturned absent an abuse of discretion or manifest injustice. *Maughan v. Maughan*, 770 P.2d 156, 159 (Utah Ct.App.1989). This discretion is limited in that: (1) it must be exercised within the confines of the legal standards set by the appellate courts, and (2) the facts and reasons for the court's decision must be set forth in appropriate findings of fact and conclusions of law. *Id.; see also Davis*, 749 P.2d at 648.

■ The trial court's primary focus must be on the best interests of the child, rather than on the conduct of the parties during the marriage. *Deeben v. Deeben*, 772 P.2d 972, 974 n. 4 (Ct.App.1989). To determine the best interests of the child, the trial court must consider "function-related" factors, which include:

the preference of the child; keeping siblings together; the relative strength of the child's bond with one or both of the prospective custodians; and, in appropriate cases, the general interest in continuing previously determined custody arrangements where the child is happy and well adjusted. Other factors relate primarily to the primary custodians' character or status or to their capacity or willingness to function as parents: moral character and emotional stability; duration and depth of desire for custody; ability to provide personal rather than surrogate care; significant impairment of ability to function as a parent through drug abuse, excessive drinking, or other cause; reasons for having relinquished custody in the past; religious compatibility with the child; kinship, including, in extraordinary circumstances, stepparent status; and financial condition.

*Id.* at 973 (quoting *Hutchison v. Hutchison*, 649 P.2d 38, 41 (Utah 1982)). This court has recognized that some of the more significant factors, although not dispositive, include the identity of the primary caretaker during the marriage, the parent who has the greatest flexibility to provide personal care for the child, and the relative stability of the environment each parent is capable of providing. *Id.* at 56.

■ Appellant argues that the trial court abused its discretion by considering only three factors, the identity of the primary caretaker, the bonding of the children with the prospective custodian, and the prospective custodian's emotional stability, and then disregarding evidence that weighed in appellant's favor on the emotional stability factor. The trial court, in its findings of fact and conclusions of law, stated that:

5. During the marriage, the plaintiff has been the primary caretaker of the parties' minor children, and has continued in that role since the parties' separation.

6. The parties' children are more closely bonded to the plaintiff than to the defendant.

7. Both parties are fit and proper parents.

8. Plaintiff has exhibited some emotional instability during the marriage which is principally attributable to marital conflict between the parties and does not impair plaintiff's functioning as a fit and proper parent to the children.

9. The oldest child of the parties is exhibiting some emotional problems.

. . . .

4. It is in the best interest of the parties' two minor children that their care, custody and control be awarded to plaintiff subject to the condition that plaintiff arrange for such counseling as may be necessary for Chris to overcome his emotional difficulties and if qualified counselors determine that such difficulties exist aside from the emotional trauma caused by the divorce, plaintiff shall follow through with such counseling [sic] for Chris as may be necessary. This conclusion takes into account the emotional instability of the plaintiff which the Court believes can be addressed by counseling.

Because custody determinations are so fact-sensitive, there is no required set of conditions which the court must consider, but the applicability and relative weight of the various factors in a particular case lies within its discretion. *Hutchison*, 649 P.2d at 41; *see Bake v. Bake*, 772 P.2d 461, 462–65 (Ct.App.1989). Although the judge's written findings do not take into account all possible factors, he considered the factors most pertinent to this case, which was well within his discretion.

■ Appellant argues that the judge abused his discretion in awarding custody to respondent without requiring her to obtain counseling for her emotional problems. The judge clearly considered respondent's emotional state and potential need for counseling in his findings, and his failure to require respondent to obtain counseling lies within his discretion.

Appellant further argues that the trial court's finding that respondent's emotional problems were a result of the marriage relationship and its conclusion that respondent was a fit and proper person to have custody of the children in spite of her emotional disability were against the clear weight of the evidence. In so arguing, he relies heavily on the expert testimonies of Ravsten and Vanderlinden.

■ To mount a successful attack on the trial court's factual findings, an appellant must marshal all the evidence in support of the trial court's findings and then demonstrate that, even viewing the evidence in the light most favorable to the findings, the evidence is insufficient to support the findings, *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985), or that its findings are otherwise clearly erroneous. A finding is clearly erroneous when, even though there is evidence to support it, the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *State v. Walker*, 743 P.2d 191, 193 (Utah 1987). This court does not consider evidence *de novo*, so the mere fact that we might reach a different result than the trial court on the same evidence does not justify setting aside the trial court's findings. *Id.*

Evidence as to respondent's emotional state, its effect on the children, and her ability as a parent is extremely controverted. Respondent admitted she "ranted and raved" at times, but that this was due to the interpersonal conflict with appellant. Appellant admitted that respondent was able to take physical care of the boys and behaved appropriately in public, but felt that she disciplined them inappropriately, was emotionally detached from them, and had an angry and explosive temperament which was upsetting to them. Although appellant's expert witnesses testified, in substance, that respondent's parenting skills were substantially impaired by her emotional state, there was much other evidence presented as to her positive parent-

ing skills, her involvement with the children, and their bonding to her. Further, respondent's witnesses had observed her interact with the children while appellant's experts had no such opportunity. Thus, even though much of the expert testimony supports appellant's position, he has not taken all of the evidence in respondent's favor, viewed it in the light most favorable to the trial court's findings, and demonstrated that it is insufficient to support the court's findings or otherwise shown that the trial court's findings were clearly erroneous.

Therefore, we find that the court did not abuse its discretion in considering three factors and in not weighing the emotional stability factor in appellant's favor.

## EXCLUSION OF EXPERT TESTIMONY

■ Appellant argues that the trial court erred in excluding Vanderlinden's proffered testimony as to which party should have custody of the children, asserting that Vanderlinden's promise to not make a comparative statement at the initial hearing did not preclude him from giving more complete testimony at the final hearing. He states that Vanderlinden's failure to meet with the children or respondent after the initial hearing goes only to the weight and not to the admissibility of the proffered testimony, and, therefore, the testimony should have been permitted.

Under Rule 702 of the Utah Rules of Evidence, the trial court has discretion to determine the qualification of an expert witness to give an opinion on a particular matter, *Wessel v. Erickson Landscaping Co.*, 711 P.2d 250, 253 (Utah 1985); *State v. Wight*, 765 P.2d 12, 14 (Utah Ct.App.1989), and the admissibility of the expert's testimony. *Craig Food Indus. v. Weihing*, 746 P.2d 279, 283 (Utah Ct.App.1987). The expert's opinion may be based upon facts or data he or she perceived or were made known to him or her at or before the hearing. *Wight*, 765 P.2d at 15. The critical factor is whether the expert has knowledge that can assist the trier of fact in resolving the issues before it. Utah R.Evid. 702.

At no time did the trial judge indicate that he had excluded Vanderlinden's testimony on the basis of Vanderlinden's promise to respondent. Instead, he explicitly excluded the testimony for lack of sufficient foundation, stating:

> [t]he basis for my sustaining the objection, ... is no counseling with the children, no tests on the children, no counseling with the plaintiff for that purpose, and without that basis, I think that's all we're doing—if his only purpose in being here has to do with custody, then I'm not sure that he has the basis at this time to discuss with the Court the attributes that can only go to that issue.

The trial court is free to accept or reject an expert's opinion, *State v. Shickles*, 760 P.2d 291, 302 (Utah 1988); *Sorensen v. Sorensen*, 769 P.2d 820, 830 (Utah Ct.App. 1989) *cert. filed* 106 Utah Adv.Rep. 63, and may accord to the witnesses' opinion whatever weight it deems proper. *Shickles*, 760 P.2d at 302. Apparently, the judge was not persuaded by the testimony of the two experts, so did not rule in appellant's favor, which is within his discretion and does not constitute error.

## DENIAL OF MOTION FOR NEW TRIAL

■ Appellant asserts that the trial court abused its discretion in denying his motion for a new trial, alleging that he was surprised at the court's refusal to admit Vanderlinden's proffered testimony as to the better custodial parent and at Vanderlinden's promise to respondent not to give a comparison, which he could not have reasonably discovered before the trial.

The decision to grant a new trial lies largely within the trial court's discretion. *State v. Brown*, 771 P.2d 1093, 1095 (Ct. App.1989). However, the trial court has no discretion to grant a new trial unless the moving party shows at least one of the circumstances specified in Rule 59(a) of the Utah Rules of Civil Procedure. *Moon Lake Elec. Ass'n v. Ultrasystems W. Constructors, Inc.*, 767 P.2d 125, 128 (Utah Ct.App.1988). These circumstances include, among others, "[a]ccident or sur-

prise, which ordinary prudence could not have guarded against"; "[n]ewly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial"; and "insufficiency of the evidence to justify the verdict or other decision." Utah R.Civ.P. 59(a)(3), (4), and (6). So long as such a showing is not made, we will not reverse the trial court's decision on a motion for a new trial absent a clear abuse of discretion. *Brown*, 771 P.2d at 1095; *Moon Lake Electrical Ass'n*, 767 P.2d at 128.

Appellant has shown none of the above circumstances. Because the trial judge excluded Vanderlinden's testimony on the basis of lack of foundation rather than on Vanderlinden's promise to respondent, appellant's surprise at discovering the existence of the promise is irrelevant. Appellant states that he met with Vanderlinden several times prior to trial to prepare for the trial in addition to his counseling visits, and was presumably aware of the basis for Vanderlinden's opinion, including the fact that Vanderlinden had never counseled with the children or with appellant together with the children. That Vanderlinden's testimony was excluded because of lack of foundation should not have surprised appellant because, he, in all prudence, should have known the basis for his testimony. Also, Vanderlinden's affidavit did not provide newly discovered evidence but only stated testimony already known at the time of trial but excluded on the basis of lack of foundation. Because appellant has shown none of the circumstances required in Rule 59(a), the trial court had no discretion to grant him a new trial.

## ALIMONY

Appellant insists that the trial court erred in awarding alimony to respondent because it failed to adequately consider (1) respondent's ability to earn income because her employment status might change in the near future, and (2) his inability to provide support. He claims his financial obligations nearly equal his income, which leaves him insufficient funds with which to support himself.

Trial courts have essentially the same discretion in awarding alimony and dividing property as they have in making child custody awards. *Davis*, 749 P.2d at 649. In awarding alimony, appellate courts require the trial court to consider each of the following three factors: (1) the financial conditions and needs of the receiving spouse; (2) the ability of the receiving spouse to produce a sufficient income for him or herself; and (3) the ability of the responding spouse to provide support. *Throckmorton v. Throckmorton*, 767 P.2d 121, 124 (Utah Ct.App.1988); *Fullmer v. Fullmer*, 761 P.2d 942, 951 (Utah Ct.App. 1988). If these three factors have been considered, we will not disturb the trial court's alimony award unless such a serious inequity has resulted as to manifest a clear abuse of discretion. *Fullmer*, 761 P.2d at 950; *Andersen v. Andersen*, 757 P.2d 476, 478 (Utah Ct.App.1988). The ultimate test of an alimony award is whether the party receiving alimony will be able to support him or herself "as nearly as possible at the standard of living ... enjoyed during the marriage." *English v. English*, 565 P.2d 409, 411 (Utah 1977).

The court's written findings indicate that "both parties are able-bodied and capable of employment. Plaintiff is seeking employment but is presently unemployed and caring for the parties' minor children on a daily basis. She is trained as a school teacher, and is preparing to return to teaching in the Fall of 1988." It then detailed the parties' economic needs and sources of income. The court concluded, among other things, that "[t]here are insufficient assets and income to meet the needs of the parties."

It is reversible error if the trial court fails to make specific findings on all material issues unless the facts in the record are "clear, uncontroverted, and capable of supporting only a finding in favor of the judgement," *Throckmorton*, 767 P.2d at 124 (quoting *Acton v. Deliran*, 737 P.2d 996, 999 (Utah 1987)), or if the court fails to consider the three factors. *See Maxwell v. Maxwell*, 754 P.2d 84, 86–87 (Utah Ct.App.

1988). It is clear from these findings that the court did consider the three factors when it found that respondent was capable of employment but currently unemployed, and when it examined both parties' budgetary needs and appellant's income. The record indicates that the parties are heavily in debt and unable to meet their current financial obligations. Therefore, even though the trial court's award of alimony did not leave appellant with much money to live on, it is not inherently unfair or an abuse of discretion. Once respondent becomes gainfully employed and her income rises, there is nothing to preclude appellant from moving for a modification of the alimony award at that time. *See* Utah Code Ann. § 30-3-5 (1987).

Although the trial court did not abuse its discretion in making an award of alimony here, it is curious that it awarded permanent rather than temporary alimony when respondent's employment circumstances were likely to change significantly in the near future. Because appellant did not raise the issue of temporary alimony, however, we decline to rule on it.

Affirmed.

BENCH and ORME, JJ., concur.