**Erin Jo CHAMBERS, Plaintiff, Appellant, and Cross–Appellee,**

v.

**Thomas D. CHAMBERS, Defendant, Appellee, and Cross–Appellant.**

No. 900631–CA.

Court of Appeals of Utah.

Oct. 21, 1992.

Brian R. Florence, Ogden, for appellant.

Pete N. Vlahos, Ogden, and Mark J. Robens, Phoenix, Ariz., for appellee.

Before GARFF, ORME and RUSSON, JJ.

RUSSON, Judge:

Erin Jo Chambers and Thomas D. Chambers appeal the trial court's order granting divorce and specifying numerous property and support provisions. We affirm in part, and reverse and remand in part.

## FACTS

Erin Jo Chambers and Thomas D. Chambers were married on February 12, 1980. While married, Mr. Chambers signed his first professional basketball contract with the San Diego Clippers, for whom he played for two seasons. He was subsequently traded to the Seattle Supersonics, for whom he played for five seasons. He then signed a five year contract with the Phoenix Suns, two seasons of which had been completed at the time of divorce. Mrs. Chambers had virtually no employment during the parties' marriage, pursuant to an agreement between the parties that she would stay at home with their three children.

Mrs. Chambers filed a complaint for divorce on April 7, 1989, which was granted on November 30, 1990. During the course of the proceedings, the parties stipulated to custody and visitation of the three minor children, and valuation and distribution of most of the marital assets. Thereafter, the trial court entered its order with respect to the remaining property, alimony, and attorney fees.

Both parties appeal the trial court's award of alimony and attorney fees to Mrs. Chambers. Mrs. Chambers further appeals the trial court's determination that future contract payments for Mr. Chambers to play basketball for the Phoenix Suns were not property rights subject to division. Mr. Chambers challenges the trial court's division of his retirement benefits.

## ALIMONY

Both parties challenge Mrs. Chambers's alimony award. The trial court awarded Mrs. Chambers $10,000 per month alimony, to be reduced to $5,000 per month after three years, and to terminate after six years. Mrs. Chambers argues that the trial court erred in the amount of alimony awarded to her, its automatic reduction after three years, and its termination after six years. Mr. Chambers, on the other hand, contends that the trial court awarded

alimony to Mrs. Chambers which exceeds her needs.

■ The trial court is given considerable discretion to provide for spousal support, and such an award will not be overturned on appeal unless there has been a clear and prejudicial abuse of discretion. *Paffel v. Paffel,* 732 P.2d 96, 100 (Utah 1986); accord *Rasband v. Rasband,* 752 P.2d 1331, 1333 (Utah App.1988).

■ In *Schindler v. Schindler,* 776 P.2d 84 (Utah App.1989), we outlined the factors to be considered by a trial court in determining alimony: "(1) the financial conditions and needs of the receiving spouse; (2) the ability of the receiving spouse to produce a sufficient income for him or herself; and (3) the ability of the responding spouse to provide support." *Id.* at 90 (citations omitted). "If these three factors have been considered, we will not disturb the trial court's alimony award unless such a serious inequity has resulted as to manifest a clear abuse of discretion." *Id.* (citations omitted). Moreover, "in considering these factors, the trial court is required to make adequate factual findings on all material issues, unless the facts in the record are 'clear, uncontroverted, and capable of supporting only a finding in favor of the judgment.'" *Haumont v. Haumont,* 793 P.2d 421, 424 (Utah App.1990) (quoting *Throckmorton v. Throckmorton,* 767 P.2d 121, 124 (Utah App.1988), quoting *Acton v. Deliran,* 737 P.2d 996, 999 (Utah 1987)).

As to the issue of alimony in the case at bar, the trial court stated in Finding of Fact number seven:

> The plaintiff [Mrs. Chambers] presented to the court in her "Exhibit 11," a request and demonstrated need for alimony in the sum of $10,000.00 per month with an additional $4,000.00 per month being requested by plaintiff as necessary to pay the income taxes on the $10,000.00 per month. Plaintiff testified that many of the base expenses were also expenses that would apply to the children as well as herself. Defendant [Mr. Chambers] contends that plaintiff is not entitled to any award of alimony based upon the substantial assets she is receiving. Considering defendant's "Exhibit 25," the court finds that the plaintiff has a need to maintain a standard of living somewhat close to what the parties maintained in the past. The court further determines that the defendant has the ability to pay and plaintiff should be awarded alimony in the sum of $10,-000.00 per month, which should continue for three (3) years. Thereafter, plaintiff should be paid alimony in the sum of $5,000.00 per month for an additional three (3) years after which alimony will terminate. The reason that the alimony should decline after three (3) years and terminate after six (6) years, is based upon the finding by the court that the plaintiff will earn substantial income from assets that have been awarded to her and which will, by the time three (3) years have passed, be substantially in her possession or under her control and she will be able to invest these assets in such a way as to produce income for her own support.

■ This finding is insufficient. *See Morgan v. Morgan,* 795 P.2d 684, 689 (Utah App.1990); *Johnson v. Johnson,* 771 P.2d 696, 699 (Utah App.1989); *Marchant v. Marchant,* 743 P.2d 199, 207 (Utah App. 1987). Contrary to the second prong of *Schindler,* the trial court's findings do not address Mrs. Chambers's level of education, health, and other matters concerning her immediate or eventual employability. Moreover, without further explanation, the court's blanket reference to "substantial income from assets that have been awarded to her" is inadequate to justify the court's reduction of alimony. Without more, we cannot determine whether such reduction constituted an abuse of discretion. Lastly, as to the third prong of *Schindler,* the court must do more than simply state that "the defendant has the ability to pay." Given the amount of conflicting evidence on these facts, the trial court's award of alimony must be reversed and remanded for further findings.[1]

1. Additionally, upon remand, the district court must reconsider its apparent inclusion of the

## ATTORNEY FEES

Both parties appeal the trial court's award of partial reimbursement of attorney fees to Mrs. Chambers. Mrs. Chambers argues that she should receive full reimbursement of attorney fees, while Mr. Chambers argues that attorney fees should not be awarded due to Mrs. Chambers's failure to prove the reasonableness of the fees.

■ Utah Code Ann. § 30–3–3 (1989) grants trial courts the power to award attorney fees in divorce cases. Both the decision to award attorney fees and the amount of such fees are within the sound discretion of the trial court. *Bell v. Bell,* 810 P.2d 489, 493 (Utah App.1991) (citing *Kerr v. Kerr,* 610 P.2d 1380, 1384 (Utah 1980)). However, such award must be based on evidence of the reasonableness of the requested fees, as well as the financial need of the receiving spouse, and the ability of the other spouse to pay. *Id.* (citing *Rasband v. Rasband,* 752 P.2d 1331, 1337 (Utah App.1988)).

■ As to the award of attorney fees in the case at bar, the trial court found:

The plaintiff incurred attorney's fees in the sum of $58,050.00 in prosecuting this action, including estimated wrap-up and completion time. The defendant had previously paid, pursuant to Stipulation between the parties, the sum of $12,-500.00 toward the plaintiff's attorney's fees. While it is true that there is probably adequate money being distributed to both parties to pay their own attorney's fees, in view of the sums of money that Mr. Chambers is going to be making over the next few years, the court determines it is appropriate that he assist the plaintiff by payment in the sum of $10,000.00 [in addition to the sums already paid] for her attorney's fees.

Since the trial court, in awarding attorney fees, did not address the reasonableness of the fees, and stopped short of finding that each party would have the means to pay their own fees out of "the money being distributed to both," such award of attorney fees constituted an abuse of discretion. Accordingly, we reverse the trial court's award of partial reimbursement of attorney fees, and remand this issue for consideration under the standards announced in *Bell.*

## FUTURE CONTRACT PAYMENTS

Mrs. Chambers appeals the trial court's conclusion that future contract payments for Mr. Chambers to play basketball for the Phoenix Suns were not property rights subject to division.

In *Dunn v. Dunn,* 802 P.2d 1314 (Utah App.1990), we held that "the right to future income is a marital asset *where that right is derived from efforts or products produced during the marriage.*" *Id.* at 1318 (emphasis added) (citations omitted). Moreover, in *Woodward v. Woodward,* 656 P.2d 431 (Utah 1982), the Utah Supreme Court noted that "[t]he essential criterion is whether a right to the benefit or asset has accrued in whole or in part during the marriage. To the extent that the right has so accrued it is subject to equitable distribution." *Id.* at 432–33.

■ In the case at bar, Mr. Chambers's future income will be derived from his playing basketball during the term of his contract, rather than from some past effort or a product produced during the marriage. Furthermore, his right to the benefit of that salary will accrue at that time, and did not accrue during the course of the marriage. This is especially true in light of the fact that the contract payments will only be made provided that Mr. Chambers does not suffer injury, illness, disability or death as

children's expenses in Mrs. Chambers's alimony award. In its findings, the court acknowledges that many of the expenses listed in Mrs. Chambers's request for $10,000 per month alimony were expenses that apply to the children. In view of the district court's award of $4500 per month in child support, it is plainly inequitable that Mr. Chambers's alimony payment includes

the children's expenses. If the child support that the parties stipulated to is insufficient to cover the children's expenses, then the court must award sufficient child support, not increase alimony to include the children's expenses. *See generally Asper v. Asper,* 753 P.2d 978, 981 (Utah App.1988) (increased child support is an unacceptable substitute for alimony).

a result of participation or involvement in any one of a number of off-court activities. Thus, the trial court correctly determined that Mr. Chambers's future contract payments were post-marital income and not marital property rights subject to division.

Additionally, other jurisdictions that have considered this question have held that future contract earnings for services to be performed, not as payment for past performance, are not a property right subject to division. *See, e.g., Lewis v. Lewis,* 785 P.2d 550, 555–56 (Alaska 1990); *In re Marriage of Sewell,* 817 P.2d 594, 596 (Colo.App. 1991); *In re Marriage of Anderson,* 811 P.2d 419, 420 (Colo.App.1990). Accordingly, we affirm the trial court's decision not to include Mr. Chambers's future contract payments in the property division.

## RETIREMENT BENEFITS

Lastly, Mr. Chambers argues that the trial court erred in the division of his retirement benefits, under *Woodward v. Woodward,* 656 P.2d 431 (Utah 1982).

In *Woodward,* the Utah Supreme Court stated:

> Long-term and deferred sharing of financial interests are obviously too susceptible to continued strife and hostility, circumstances which our courts traditionally strive to avoid to the greatest extent possible. This goal may best be accomplished, if a present value of the pension plan is ascertainable, by fixing the other spouse's share thereof, as adjusted for all the appropriate considerations, including the length of time the pensioner must survive to enjoy its benefits, to be satisfied out of other assets leaving all pension benefits to the employee himself.

*Id.* at 433 (quoting *Kikkert v. Kikkert,* 177 N.J.Super. 471, 478, 427 A.2d 76, 79–80 (1981)).

As to the issue of retirement benefits in the case at bar, the trial court ordered:

> The retirement accumulated by the defendant with the NBA should be divided between the parties by operation of a Qualified Domestic Relations Order (QDRO). If that can be effected by an Order that will secure an immediate division of the retirement accounts of the two parties, that shall be effected. If that cannot be done at the present time, division shall be effected by a Qualified Domestic Relations Order (QDRO) which includes division of the interests of the parties as set forth by the Supreme Court of the State of Utah in the decision of *Woodward v. Woodward,* 656 P.2d 431 (Utah 1982) in which plaintiff would be entitled to one-half (½) of the pension proceeds for the number of years they were married during the time the pension was being accumulated.

While "[t]he best method for distributing or allocating retirement benefits or their value depends on the particular circumstances," *Motes v. Motes,* 786 P.2d 232, 234 (Utah App.1989) (citing *Gardner v. Gardner,* 748 P.2d 1076, 1079 (Utah 1988)), *cert. denied,* 795 P.2d 1138 (Utah 1990), it is preferable to "end [the] marriage and allow the parties to make as much of a clean break from each other as is reasonably possible." *Gardner,* 748 P.2d at 1079. Pursuant to *Woodward,* the preferred method for doing so is to fix the other spouse's share of the pension plan, as adjusted for all the appropriate considerations, and satisfy the other spouse's share out of other assets, thereby leaving all pension benefits to the employee. *See Woodward,* 656 P.2d at 433. This is especially true when there are sufficient other assets for equitable distribution and a present value of the retirement benefits can be established. *See id.* However, in the case at bar, it would appear that the trial court did not even consider such possibility here. Accordingly, the trial court's order with regard to Mr. Chambers's retirement benefits is reversed and remanded with directions to reconsider its division of Mr. Chambers's retirement benefits under the analysis set forth in *Woodward,* including particularly the preference for valuation of the non-employee spouse's share and its immediate cash-out from other assets.

## CONCLUSION

For the above reasons, we (1) reverse and remand the trial court's awards of

alimony and attorney fees to Mrs. Chambers, based on the insufficiency of the court's findings; (2) affirm the trial court's conclusion that Mr. Chambers's future contract payments are not marital property rights subject to division; and (3) reverse and remand the trial court's division of Mr. Chambers's retirement benefits.

GARFF and ORME, JJ., concur.