Barbara HILL, Plaintiff and Appellee,

v.

Steve HILL, Defendant and Appellant.

No. 920669–CA.

Court of Appeals of Utah.

Feb. 4, 1994.

Shelden R. Carter, Brook J. Sessions (argued), Carter, Phillips & Wilkinson, Provo, for defendant and appellant.

Lyle W. Hillyard (argued), Hillyard, Anderson & Olsen, Logan, for plaintiff and appellee.

Before GREENWOOD, ORME and RUSSON, JJ.

## AMENDED OPINION UPON REHEARING *

GREENWOOD, Judge:

Steve Hill appeals from the provisions of the trial court's decree of divorce regarding child support obligations, alimony, debt dis-

---

* This opinion replaces the opinion of the same name issued December 29, 1993. The sole change is the addition of section E, "Attorney Fees on Appeal."

tribution and the right to claim tax dependency exemptions. We affirm.

## FACTS

Steve and Barbara Hill were married on July 23, 1976. The couple had five children over the course of the marriage, ranging in age from five to fifteen as of the date of the divorce hearing.

For the last twelve years of the marriage, until July of 1991, Mr. Hill worked at Morton Thiokol as a cab driver. Due to the payscale at Thiokol as well as substantial overtime hours, Mr. Hill was earning approximately $2400 per month, a higher salary than his qualifications would ordinarily warrant. While working at Thiokol, Mr. Hill completed a bachelor's degree in business.

Ms. Hill did not work outside the home until after the parties separated in July of 1991. · For a short period of time she worked for Macey's grocery store, earning $6.00 per hour. After leaving Macey's, Ms. Hill provided daycare in her home and worked part-time for a printing company earning $6.50 per hour. Although she received some financial support from Mr. Hill after the parties separated, Ms. Hill was unable to meet living expenses for herself and the children and required state assistance. At the time of the divorce hearing, Ms. Hill was unemployed.

Mr. Hill testified at trial that when the parties separated, Ms. Hill asked him to leave the county, and it was understood that he would have to give up his job at Thiokol. Ms. Hill testified that it was Mr. Hill's decision to leave Thiokol because he disliked his job and wanted to enter a different field of work. Regardless of the basis for this decision, Mr. Hill moved to Orem to live with his parents. He obtained employment at the State Mental Hospital, earning $6.90 per hour at the time of trial, and in addition did some substitute teaching. Mr. Hill also enrolled in a one-year program, scheduled to begin in the fall of 1993 at the Barrett Academy, where he hoped to obtain a certificate to teach elementary school.

The pertinent parts of the September 9, 1992 divorce decree awarded Ms. Hill: (1) custody of the parties' five children, (2) ali-

mony of $100 per month (to be reexamined in two years), (3) child support of $597 per month based upon Mr. Hill's imputed income of $2000 per month and Ms. Hill's imputed income of $1040 per month, and (4) the right to claim all five children as dependents for income tax purposes, although Mr. Hill could claim them by paying Ms. Hill an amount equal to the increase in her taxes resulting from the loss of these dependency exemptions. In addition, the trial court split the parties' debts as follows: (1) Mr. Hill is liable for the EduServ student loan in the amount of $10,800, (2) Mr. Hill is liable for the VISA credit card debt at USU Credit Union in the amount of $960, (3) the debt owed to Dr. Joseph Hansen of approximately $167 is to be paid $100 by Mr. Hill and $67 by Ms. Hill, (4) Mr. Hill must pay $320 of the debt owed to Dr. Johns, and Ms. Hill must pay $280, (5) the parties are to split any deficiency claim owed to the Federal National Mortgage Association, and (6) Mr. Hill must pay two-thirds of the parties' combined attorney fees of $6633. Mr. Hill appeals.

## ISSUES

Mr. Hill argues on appeal that (1) the trial court made insufficient findings of fact to impute income to appellant for purposes of the child support award and the alimony award, (2) the trial court made insufficient findings of fact to support an award of alimony, (3) the trial court abused its discretion by requiring that appellant pay the majority of the marital debts, and (4) the trial court abused its discretion by awarding to Ms. Hill all five income tax dependency exemptions for the parties' children.

## ANALYSIS

### ·A. Imputation of Income

■ Child support obligations are fixed in proportion to the adjusted gross incomes of the parents. Utah Code Ann. § 78–45–7.7(1) (1992). Gross income is generally established by proof of current income. *Id.* § 78–45–7.5(5)(b). However, the court may impute gross income if it has first examined a parent's historical and current earnings to determine that underemployment or overem-

ployment exists. *Id.* § 78–45–7.5(5)(c), (6). The court may not, however, impute income to a parent for the purpose of determining the appropriate level of child support unless the parent either stipulates to the amount imputed or there is a hearing in which the finding is made that the parent is voluntarily unemployed or underemployed. *Id.* § 78–45–7.5(7)(a). In this case, Mr. Hill did not stipulate to the amount imputed, and he argues the trial court did not make the required finding that he is voluntarily unemployed or underemployed.[1] *See Hall v. Hall,* 858 P.2d 1018, 1026 (Utah App.1993) (stating that in determining whether to impute income due to underemployment, findings must address "the critical question of whether the drop in earnings was voluntary").

In fixing Mr. Hill's gross income, the trial court took into account his last three years of employment at $2400 per month and his current employment at $6.90 per hour along with his income from substitute teaching. Mr. Hill's attorney conceded at trial that an imputation of income was proper but argued that the monthly salary should be imputed at $1900—Mr. Hill's base monthly pay at Thiokol without overtime. The court recognized that Mr. Hill was earning substantially less money at his current job, but noted on the record that Mr. Hill had voluntarily disregarded his familial obligations when he left Thiokol to pursue a different career. The court therefore imputed a salary of $2000 per month to Mr. Hill—an amount greater than his current salary, but less than his historical earnings.

While it is true that the court's findings of fact do not include a specific finding that Mr. Hill was underemployed, his counsel brought this statutory requirement to the court's attention at the beginning of trial and the record reveals that the court discussed the issue of voluntary underemployment with Mr. Hill at length. Furthermore, as noted earlier, Mr. Hill conceded that income imputation was appropriate, thereby conceding that he was underemployed, arguing only as

to the proper income the court should impute. Mr. Hill also conceded during questioning that he was aware that his decision to accept a lower paying job so that he could go back to school had placed his family on welfare, and would keep them there until he got a teaching position. He also agreed that there were more menial jobs available in Orem that would pay better than his current job, but stated that he felt it was important to select a job that was closer to his chosen profession. Further, Mr. Hill thought it was appropriate to impute a monthly income of approximately $1000 to his wife, and agreed that he has twice the earning capability of his wife.

The trial court remarked several times that Mr. Hill's decision to quit his Thiokol job and pursue a new career was made without regard for the financial impact on Ms. Hill and their five children. In addition, the trial court observed that the state's assistance program was impacted by Mr. Hill's election to change occupations. In light of these discussions, we conclude that the trial court implicitly found a condition of voluntary underemployment as a basis for imputing income to Mr. Hill. "Unstated findings can be implied if it is reasonable to assume that the trial court actually considered the controverted evidence and necessarily made a finding to resolve the controversy, but simply failed to record the factual determination it made." *Hall,* 858 P.2d at 1025. As this court noted in *Hall,*

> [W]here the court formulates detailed subsidiary findings of fact which underlie a finding of underemployment, and which, by themselves, show the steps by which the court arrived at its apparent conclusion that a parent is underemployed under section 78–45–7.5(7)(a), the court's decision to impute income will not be invalidated solely on the ground that the "finding" of voluntary underemployment was not couched in the exact language of the statute.

1. Mr. Hill also argues that even if he were voluntarily underemployed, it is improper to impute income to him because he is "a parent engaged in career or occupational training to establish basic job skills." Utah Code Ann. § 78–45– 7.5(7)(d)(iii) (1992). The trial court held that Mr. Hill did not fit within this statute because he already had a bachelor's degree, and was pursuing further education. We find no error in the court's holding.

*Id.* Therefore, because Mr. Hill acquiesced to the imputation of income at the trial level and because Mr. Hill's job history and current employment options inarguably support this imputation, the trial court did not abuse its discretion in imputing income to Mr. Hill of $2000 per month.

## B. Alimony

■ The trial court initially awarded Ms. Hill $300 per month in alimony based upon findings concerning the long-term nature of the marriage and the fact that Ms. Hill's earning potential was roughly one-half of Mr. Hill's earning potential. The court then reduced the alimony award to $100 per month and compensated for the decrease by awarding responsibility for Ms. Hill's half of the EduServ loan to Mr. Hill. The court recognized that Mr. Hill's financial situation would probably change in the near future, and therefore set the matter for further automatic hearing in two years to revisit the matter of alimony.

■ There are three factors that a trial court must consider in making an alimony award:

1. the financial condition and needs of the party seeking alimony;

2. that party's ability to produce sufficient income for him or herself; and

3. the ability of the other party to provide support.

*Thronson v. Thronson,* 810 P.2d 428, 435 (Utah App.) (citing *Naranjo v. Naranjo,* 751 P.2d 1144, 1147 (Utah App.1988)), *cert. denied,* 826 P.2d 651 (Utah 1991). Failure to consider these factors constitutes an abuse of discretion. *Id.*

Mr. Hill does not dispute the court's findings with respect to the first and second factors governing alimony awards. Instead, he argues that the court did not make the requisite findings on the third factor, his ability to provide support. Mr. Hill points out that he only grosses $1100 per month, and out of this amount he must pay almost $600 in child support, $100 in alimony, $200 towards the Eduserv loan and $200 to his parents for board and lodging. In light of his financial condition, Mr. Hill contends that the court abused its discretion in awarding alimony to Ms. Hill.

Ms. Hill concedes that the court did not make an express finding on Mr. Hill's ability to pay, but notes that the court fully considered this factor at trial. Mr. Hill provided the court with documentation concerning his present and historical earnings, along with his current expenses. The court made several references to Mr. Hill's financial condition, evidencing a complete understanding of the resources available to pay alimony. The trial court determined that Mr. Hill had voluntarily opted to be in his current financial condition and the court, in making the alimony award, was not bound by Mr. Hill's decision. By imputing income of $2000 per month, the trial court implicitly made a finding regarding Mr. Hill's ability to pay alimony, namely, that he was able to pay $100 per month in alimony. That determination was therefore reasonable, given the remainder of the court's orders regarding the parties' financial obligations and the court did not abuse its discretion in making this determination.

## C. Allocation of Debt

Mr. Hill claims that the court abused its discretion when it allocated the marital debts so that Mr. Hill was responsible for approximately 87% of the debt and Ms. Hill was left with only 13% of the debt. Mr. Hill argues that given the trial court's finding that he was capable of making twice as much money as Ms. Hill, the trial court should have allocated the debts in a two-to-one ratio.

Mr. Hill's argument is meritless. The majority of the debts *were* divided in a two-to-one ratio. Part of the reason Mr. Hill ended up with 87% of the debt is that he improperly included the entire EduServ loan in his calculations of the debt assigned to him. Ms. Hill's half of the EduServ debt became Mr. Hill's responsibility only upon a corresponding reduction in his alimony obligation. It is therefore misleading to think of it as routine debt distribution. In addition, Mr. Hill was allocated the entire VISA debt ($960) because he had earlier taken a marital asset (a $1416 check from Thiokol for early retirement benefits) and applied it solely for his own use.

## D. Tax Exemptions

The trial court awarded to Ms. Hill the right to claim all five children as income tax dependents. However, Mr. Hill was permitted to purchase this right by paying for Ms. Hill's corresponding increase in taxes caused by the loss of the dependency exemptions. Mr. Hill challenges that decision, arguing that by awarding him some of the exemptions, the trial court could have "freed up more of Mr. Hill's income to meet his substantial burdens incurred as a result of the marriage."

Pursuant to Internal Revenue Code § 152, the custodial parent is automatically entitled to the available dependency exemptions unless he or she "signs a written declaration . . . that such custodial parent will not claim such child as a dependent" and "the noncustodial parent attaches such written declaration to [his or her] return." 26 U.S.C. § 152(e)(2) (1988). However, this court held in *Motes v. Motes*, 786 P.2d 232 (Utah App. 1989), *cert. denied*, 795 P.2d 1138 (Utah 1990), that section 152 does not *mandate* that a state court grant all available exemptions to the custodial parent. *Id.* at 236. "[S]tate courts do retain their traditional authority to allocate dependency exemptions notwithstanding [section 152(e)(2) ]." *Id.*

Nonetheless, in this case, given Ms. Hill's limited financial resources and potential, the trial court determined that it would be best to allocate all the dependency exemptions to her. While Mr. Hill objects to this decision, he has not established by case law or legal analysis that the trial court has abused its discretion, particularly in light of the fact that the trial court's order permits him to purchase the dependency exemptions from Ms. Hill. For this reason, there is no basis for disturbing the presumption of validity attaching to the trial court's order.

## E. Attorney Fees and Costs on Appeal

Ms. Hill requests an award of attorney fees and costs on appeal. " 'Generally, when the trial court awards fees in a domestic action to the party who substantially prevails on appeal, fees will also be awarded to that party on appeal.' " *Potter v. Potter*, 845 P.2d 272, 275 (Utah App.1993) (quoting *Lyngle v. Lyngle*, 831 P.2d 1027, 1031 (Utah App.1992)). Ms. Hill was awarded partial attorney fees by the trial court, and it is conceded that she substantially prevailed on appeal. We therefore award attorney fees and costs on appeal, subject to the trial court's determination on remand that Ms. Hill is in continued need of financial assistance, that the requested fees are reasonable, and that Mr. Hill has the ability to pay the award. *Muir v. Muir*, 841 P.2d 736, 741 (Utah App.1992). The trial court should also take into account the fact that Ms. Hill was only granted partial attorney fees at trial. *Potter*, 845 P.2d at 275.

## CONCLUSION

Although the trial court did not make all the express findings required before imputing income to Mr. Hill or determining alimony, the record reveals that the trial court considered the required factors in the course of deciding these issues, and its decision was within the legitimate exercise of the court's discretion. With respect to debt distribution and allocation of tax exemptions, Mr. Hill was unable to establish that the trial court's order was so inequitable as to constitute an abuse of discretion. In the absence of such a showing, there is no basis upon which to reverse the trial court's order. We affirm, and remand this matter to the trial court for a determination of reasonable attorney fees and costs incurred on appeal.

RUSSON, J., concurs.

ORME, J., I concur, except that as to Section D I concur only in the result.