Janna GRIFFITH, Plaintiff
and Appellant,

v.

David Gary GRIFFITH, Defendant
and Appellee.

No. 970123–CA.

Court of Appeals of Utah.

June 4, 1998.

J. Franklin Allred, Salt Lake City, for Plaintiff and Appellant.

Robert M. McDonald, Salt Lake City, for Defendant and Appellee.

Before WILKINS, BILLINGS and JACKSON, JJ.

## OPINION

BILLINGS, Judge:

Appellant Janna Griffith appeals the trial court's decision in a divorce case setting alimony, dividing marital property, and imposing attorney fees against her. We affirm.

## FACTS

Janna Griffith (wife) filed for divorce from David Griffith (husband) on September 14, 1994. On June 3, 1996, the court issued a decree terminating the marriage and reserving adjudication of all other issues incident to the divorce. The case initially came before Judge John A. Rokich of the third district. However, on the second day of trial Judge Rokich recused himself in response to statements made by wife's attorney. At the same hearing, Rokich found that wife's attorney had acted in bad faith to delay the trial and manipulate the court by waiting until the second day of trial before questioning Judge Rokich's impartiality. After Rokich's recusal, Judge Leon Dever tried the case. Wife now appeals. We discuss the factual details in our analysis of the multiple issues raised on appeal.

## ANALYSIS

Wife raises six issues in her appeal of the trial court order. First, wife argues the court erred in setting husband's income for purposes of alimony and child support. Second, she argues the trial court failed to consider the required factors in setting her alimony. Third, she argues the court erred in its division of marital property. Fourth, she argues the court erred in not awarding her attorney fees. Fifth, she argues Judge Rokich erred in awarding husband attorney fees after he had recused himself. Finally, she argues Judge Dever erred in imposing Rule 11 sanctions and attorney fees on her because of her motion to disqualify husband's attorney.

### I. Did the Court Err in Determining Husband's Income?

Wife argues the court should have considered husband's side job income, use of a company car, and recent annual bonuses in setting his income for purposes of child support and alimony. "[W]hen determining an alimony award, 'it is appropriate and necessary for a trial court to consider all sources of income that were used by the parties during their marriage to meet their self-defined needs, from whatever source—overtime, second job, self-employment, etc., as

well as unearned income.'" *Breinholt v. Breinholt,* 905 P.2d 877, 880 (Utah Ct.App. 1995) (quoting *Crompton v. Crompton,* 888 P.2d 686, 690 (Utah Ct.App.1994). A court may impute income to a parent for purposes of calculating alimony and child support. *See Hill v. Hill,* 869 P.2d 963, 965 (Utah Ct.App. 1994). However, the goal of imputing income is to prevent parents from reducing their child support or alimony by purposeful unemployment or underemployment. *See id.* at 965. Thus, a court may not impute income to a parent "unless the parent either stipulates to the amount imputed or there is a hearing in which the finding is made that the parent is voluntarily unemployed or underemployed." *Id.*

### A. Side Jobs

Husband is employed full-time by Christiansen and Griffith (C & G), a business partially owned by his father. Before the divorce, husband regularly supplemented the couple's income by performing C & G-related side-jobs in addition to his regular work. Most of the side-job income went to renovate the family home. By the time of trial, husband was no longer performing these side-jobs.

Wife cites several cases in which courts have considered income from side jobs, second jobs, or overtime. However, all these cases are distinguishable from the present case. For example, in *Breinholt,* 905 P.2d at 881, we held that a husband who was a businessman and a county commissioner should pay alimony based on his total income, rather than his business income alone. In *Jensen v. Bowcut,* 892 P.2d 1053, 1057 (Utah Ct.App.1995), we upheld consideration of second-job income to calculate alimony and child support where a physician drew substantial income from a county contract that the trial court found was an integral part of his medical practice rather than a separate job. In *Hurt v. Hurt,* 793 P.2d 948, 950 (Utah Ct.App.1990), we upheld a trial court decision to include historic overtime in a husband's income even though he argued that his overtime was likely to decline in the future because we concluded that the trial court had appropriately assessed the hus-

band's income at the time of trial and that he could request modification of alimony and child support if his overtime did in fact decline in the future. In *Hill,* 869 P.2d at 965, the supreme court imputed income to a husband where it found that he was voluntarily underemployed and the husband himself had conceded that imputing income was appropriate.

In this case, the court declined to impute husband's historic side-job income for the following reasons: (1) the couple finished renovating their home shortly before the separation and no longer needed the side-job income; (2) husband's father had accepted a local government position, and husband was now performing C & G work that had once been done by his father; and (3) husband's older brother, also a C & G employee, had been diagnosed with leukemia, and husband had taken over many of his duties. The court based this refusal on the following specific findings of fact: 1) husband had stopped performing the side-jobs before the couple separated and was unlikely to perform them again in the future; 2) husband worked fifty hours a week at a demanding job, and thus was not underemployed; 3) C & G appropriately compensated husband for full time work; and 4) husband's extra work was done to keep the family business viable and thus was not evidence of voluntary underemployment. In light of these findings, the court was clearly within its discretion in refusing to impute historic side-job income in setting child support and alimony.

### B. Use of the Company Car

 Wife also argues the trial court failed to consider the income value of husband's use of a C & G company car because the court refused to hear an expert witness on this issue. Wife's attorney failed to notify opposing counsel that he would call this witness, and therefore the trial court refused to allow the witness to testify.

We will not reverse a trial court's determination on the admissibility of evidence absent an abuse of discretion impacting a party's substantive rights. It is not an abuse of discretion for a trial court to refuse to admit "evidence which is not

timely provided to the opposing party contrary to the court's instruction."

*Hill v. Dickerson,* 839 P.2d 309, 311 (Utah Ct.App.1992) (citations omitted) (upholding trial court's refusal to admit expert witness because appellant failed to produce witness by date on which court ordered both parties to exchange final witness lists).

In this case, the trial court's discovery order clearly required the parties to exchange final witness lists by July 26. In response to this order, wife's attorney provided a final list of witnesses that did not include a car expert. However, on the second day of trial, he tried to call a car expert to testify about the income value of the husband's use of the company car. Wife has produced no evidence of any special circumstances justifying the failure to timely provide a complete list of witnesses or to supplement the list with the names of new witnesses. Thus we conclude the court was well within its discretion to prohibit the unannounced introduction of this evidence.

C. Bonus Income

■ Wife also argues the court should have calculated husband's income based solely on the recent years he received a C & G company bonus. She argues the court underestimated husband's annual income when it averaged the last five years instead of excluding non-bonus years.

■ Alimony and child support is appropriately calculated based on earnings at the time of trial. *See Thronson v. Thronson,* 810 P.2d 428, 435 (Utah Ct.App.1991). However, trial courts have broad discretion to select an appropriate method of assessing a spouse's income, and we will not overturn a trial court's alimony award absent a clear and prejudicial abuse of discretion. *See Howell v. Howell,* 806 P.2d 1209, 1211 (Utah Ct.App. 1991).

In this case the trial court found that husband's receipt of a bonus depended entirely on the profitability of C & G over the course of a given year, and that his bonus income had ranged from $15,000 to zero over the past five years. No evidence at trial established that these fluctuations resulted from anything other than the normal ups and downs of a small family business. Furthermore, the court stated that it averaged the bonuses because there was substantial animosity between the parties, and any attempt to recalculate income annually would not serve the best interests of the couple's children. Given these facts, we find no abuse of discretion in the trial court's assessment of husband's bonus income.

II. Did the Court Err in Setting Wife's Alimony?

■ Wife argues the trial court failed to consider the proper factors in setting her alimony award. Under Utah law, a trial court must consider at least the following factors in determining alimony: "(i) the financial condition and needs of the recipient spouse; (ii) the recipient's earning capacity or ability to produce income; (iii) the ability of the payor spouse to provide support; and (iv) the length of the marriage." Utah Code Ann. § 30–3–5(7)(a) (Supp.1997). We have previously held that if the mandatory factors have been considered, " 'we will not disturb the trial court's alimony award unless such a serious inequity has resulted as to manifest a clear abuse of discretion.' " *Chambers v. Chambers,* 840 P.2d 841, 843 (Utah Ct.App. 1992) (quoting *Schindler v. Schindler,* 776 P.2d 84, 90 (Utah Ct.App.1989)).

In this case, the court heard extensive testimony about each of the mandatory factors for setting alimony. The court heard evidence about wife's living expenses and earning capacity, and about husband's income, living expenses and ability to pay alimony. The court also heard uncontested evidence that the children spent up to half their time with husband or his parents, who provided regular childcare, and that husband and his parents regularly paid school, recreational, and medical expenses for the children. In its findings of fact, the court stated that wife had failed to credibly establish monthly living expenses above $2,806. Thus the court found that a monthly income of $2,806 was sufficient to maintain the wife and the children in their accustomed life-style. Furthermore, the court found that wife's gross monthly income was $2,769, and hus-

band's gross monthly income less child support was $3,579. The court then concluded that a monthly alimony payment of $400 would satisfy the mandatory factors and roughly equalize the parties' economic positions. Because the trial court in this case followed the mandatory factors and we see no inequity in its alimony and child support awards, we must affirm its alimony award.

### III. Did the Court Err in Dividing Marital Property?

Wife argues the trial court made two errors in dividing marital property. First, she argues the court should have divided husband's C & G retirement account between the parties instead of awarding it solely to husband. Second, she argues the court erroneously concluded that savings bonds in husband's name were not marital property.

### A. C & G Retirement Account

▪▪▪▪ The trial court in this case correctly concluded that husband's employee retirement account was marital property subject to division. *See Woodward v. Woodward,* 656 P.2d 431, 432 (Utah 1982) (holding pension benefits are marital property that must be considered in dividing marital estate whenever right to benefits has accrued during course of marriage). Wife argues, however, that the court erred in awarding husband his C & G retirement account and awarding her other marital assets of equal value. We disagree.

In *Woodward,* the Utah Supreme Court clearly stated that this type of "cash out" from other marital property is the preferred method of dividing retirement benefits:

> Long-term and deferred sharing of financial interests are obviously too susceptible to continued strife and hostility, circumstances which our courts traditionally strive to avoid to the greatest extent possible. This goal may best be accomplished if a present value of the pension is ascertainable, by fixing the other spouse's share thereof ... to be satisfied out of other assets leaving all pension benefits to the employee himself.

*Id.* at 433 (quoting *Kikkert v. Kikkert,* 177 N.J.Super. 471, 427 A.2d 76, 79–80 (1977).

Awarding retirement benefits solely to the employee spouse comports with the goal of allowing the parties "to make as much of a clean break from each other as is reasonably possible." *Gardner v. Gardner,* 748 P.2d 1076, 1079 (Utah 1988).

In this case, the court explicitly used the preferred procedure for allocating pension benefits. First, the court estimated the present value of the C & G account at $85,-264. It then included that amount in husband's share of the marital property and awarded wife other property of equal value so that each party ended up with approximately $140,000. We find no error in this disposition of the retirement account.

### B. Savings Bonds

▪▪▪▪ Wife also argues the trial court erred in concluding savings bonds given to the couple by husband's grandmother were not marital property. In its findings of fact the court stated that these bonds were gifts from husband's grandmother to husband alone and were his separate property. Wife claims the sole reason for this finding was that the bonds were in husband's name, and that this finding thus contravened the holding of *Smith v. Smith,* 738 P.2d 655, 657 (Utah Ct.App.1987) (holding court erred in excluding evidence of grantor's intent and relying solely on legal title to determine ownership of marital property). However, in this case the court found, based on testimony about how the gifts were presented, that the bonds in husband's name were intended as personal gifts to him, while other bonds in wife's name were intended as gifts to the couple. Wife has failed to marshal and challenge the evidence supporting the trial court's finding, and thus we will not disturb the finding.

### IV. Did the Court Err in not Awarding Attorney Fees?

▪▪▪▪ Wife argues the trial court erred in refusing to award her attorney fees. "To recover attorneys fees in a divorce action, the moving party must show evidence (1) establishing the financial need of the requesting party, and (2) demonstrating the reasonable-

ness of the amount of the award." *Haumont v. Haumont*, 793 P.2d 421, 425 (Utah Ct.App. 1990). "Both the decision to award attorney fees and the amount of such fees are within the sound discretion of the trial court." *Chambers*, 840 P.2d at 844. We will not overturn an award of attorney fees in a divorce case as long as the award is "based on evidence of the reasonableness of the requested fees, as well as the financial need of the receiving spouse, and the ability of the other spouse to pay." *Id.* (citation omitted).

The trial court explicitly stated in its findings of fact that the attorney fees claimed by both parties were unreasonable given the nature of the case. In addition, the court noted that there was no financial need for fees as both parties were gainfully employed and had approximately equal post-divorce income. Consequently the court ordered each party to pay its own attorney fees. This decision was well within the discretion of the trial court and was supported by appropriate findings of fact. Thus we affirm the court's refusal to award attorney fees.

## V. Did Judge Rokich Err in Awarding Fees after Recusal?

 Wife argues Judge Rokich violated Rule 63(b) of the Utah Rules of Civil Procedure by awarding attorney fees to husband in his recusal order. We do not address the Rule 63(b) procedures because we conclude that it was Judge Dever who awarded these attorney fees in his final judgment.

During opening arguments, Judge Rokich alerted the parties that he had had an unrelated contact with husband's brother. He explained that he had recently spoken with the brother for ten minutes over the telephone on the request of his doctor. The sole purpose of the call was for Judge Rokich to gain information on a medication his doctor had recommended. Wife's attorney questioned Judge Rokich about the contact and then stated, "I have no problem with that." However, on the second day of trial, wife's attorney stated he had reconsidered and was now concerned about undue influence on or bias of the court. Judge Rokich then stated that the suggestion of undue influence cast a taint of suspicion on the trial and left him no

option but to recuse himself. He also stated on the record that he believed wife's attorney had acted in bad faith to intentionally delay the trial, and that attorney fees should be awarded to husband for the first day of trial. After this incident, Judge Leon Dever became the judge of the case. Judge Dever ultimately included Judge Rokich's award of attorney fees in his final judgment.

Wife argues that Judge Rokich erred by awarding attorney fees after his recusal. We agree. The findings of fact, conclusions of law, and judgment entered by Judge Rokich after his recusal are improper, and are vacated. However, Judge Rokich also made findings to support the award of attorney fees at the time of his recusal. Based on these findings, Judge Dever ultimately awarded the fees by incorporating them in the final judgment. If the only order granting these fees were Judge Rokich's order signed after the recusal, the award would be improper. However, since the award is contained in the validly issued final decree, we affirm the trial court's award of husband's attorney fees for the day of trial before Judge Rokich and the expenses associated with preparing the recusal order.

## VI. Did Judge Dever Err in Granting Rule 11 Sanctions?

 Wife argues Judge Dever erred in imposing Rule 11 sanctions on her because of her motion to disqualify husband's attorney. She argues that Rule 11 sanctions were not merited because the trial court made insufficient findings that the motion to disqualify was unreasonable and unsupported.

 "An award of attorney fees premised on a finding of bad faith is, to an extent, a matter within the sound discretion of the trial court ... and appellate deference is owed to the trial judge who actually presided over the proceeding and has first-hand familiarity with the litigation." *Utah Dep't Soc. Servs. v. Adams*, 806 P.2d 1193, 1197 (Utah Ct.App.1991) (citations omitted). Thus "we will affirm the particular sanction imposed by the trial court, including the reasonableness of any fee award, absent an abuse of discretion." *Taylor v. Estate of Taylor*, 770 P.2d

163, 171 (Utah Ct.App.1989) (citations omitted).

In this case the court specifically found that wife's motion to disqualify husband's attorney was not well-grounded in fact or warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and was filed for the improper purpose of harassing the husband. *See Taylor,* 770 P.2d at 170 (stating Rule 11 imposes objective duty to investigate factual and legal bases of arguments). The court emphasized that the motion was founded on innuendo and suspicion and had no real factual basis. The court also found that the legal services performed to contest the motion for disqualification were reasonable and necessary and that husband's attorney's hourly rate was reasonable. On the basis of these findings the trial court ordered wife to pay all fees incurred to contest the motion for disqualification. The trial court in this case has explicitly addressed the required factors for imposing attorney fees under Rule 11, and wife does not challenge the reasonableness of husband's claimed attorney fees. Thus we affirm the award of attorney fees.

## CONCLUSION

We conclude the court did not abuse its discretion in assessing husband's income, setting wife's alimony, or awarding attorney fees. We affirm.

WILKINS, Associate P.J., and JACKSON, J., concur.